UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SAMANTHA WILLIAMS and DAKOTA FISHER, individually and on behalf of those similarly situated, and WES PIGOTT,** | **CIVIL ACTION** |
| **VERSUS** | **JURY TRIAL DEMANDED** |
| **D'ARGENT FRANCHISING, LLC, D'ARGENT CONSTRUCTION, LLC, D'ARGENT COMPANIES, LLC, THOMAS GIALLONARDO, III, JUSTIN GIALLONARDO, and XYZ INSURANCE CO.** | **Putative Collective Action Pursuant to 29 U.S.C. § 216(b)** |

## COMPLAINT

NOW INTO COURT, through counsel, comes Samantha Williams and Dakota Fisher, on their own behalf and on behalf of those similarly situated (hereinafter referred to collectively as "Plaintiffs") and Wes Pigott, who, alleges as follows:

### I.    JURISDICTION AND VENUE

1. This Court has jurisdiction over Plaintiffs' claims of Fair Labor Standards Act, 29 U.S.C. 201, *et seq.*, (hereinafter "FLSA") violations, pursuant to 28 U.S.C. §§ 1331, 1343(a)(3). This Court has jurisdiction over Plaintiff's state law claims in accordance with 28 U.S.C. § 1367.

2. The venue is proper in the Western District of Louisiana under 28 U.S.C. §1391(b)(2). The events giving rise to the claim occurred in the Western District of Louisiana.

### II.    PARTIES

3. <u>Plaintiff Samantha Williams</u> is a person of the full age of majority maintaining a residence in the Western District of Louisiana. She worked for D'Argent Franchising, LLC, one segment of the D'Argent Companies integrated enterprise. She is a representative and member of the proposed class.

1

4. <u>Plaintiff Dakota Fisher</u> is a person of the full age of majority maintaining a residence in the Western District of Louisiana. He worked for D'Argent Construction, LLC, one segment of the D'Argent Companies integrated enterprise. He is a representative and member of the proposed class.

5. <u>Plaintiff Wes Pigott</u> is a person of the full age of majority maintaining a residence in the Western District of Louisiana. He worked for D'Argent Franchising, LLC, one segment of the D'Argent Companies integrated enterprise. He is not a representative or member of the proposed class; he is suing for retaliation.

6. <u>Defendant D'Argent Franchising, LLC</u> is a Louisiana licensed Limited Liability Company, Charter No. 42412715K. Its principal place of business and headquarters are in Alexandria, LA. It is a part of the D'Argent Companies integrated enterprise.

7. <u>Defendant D'Argent Construction, LLC</u> is a Louisiana licensed Limited Liability Company, Charter No. 35991917K. It was formerly known as Thomas Giallonardo, L.L.C. Its principal place of business and headquarters are in Alexandria, LA. It is a part of the D'Argent Companies integrated enterprise.

8. <u>Defendant D'Argent Companies, LLC</u> is a Louisiana licensed Limited Liability Company, Charter No. 35787008K. Until February 2019, it was called D'Argent Development, LLC. Its principal place of business and headquarters are in Alexandria, LA. It is a part of the D'Argent Companies integrated enterprise.

9. <u>Defendant Thomas Giallonardo, III</u> is a person of the full age of majority maintaining a residence in the Western District of Louisiana.  He is a manager, officer, director, and part owner of the LLC defendants. Upon information and belief, he exercised operational control over significant aspects of the LLC Defendants' day-today functions and is therefore individually liable for any violation of the FLSA. During all periods relevant to this litigation, he was an "employer" of Plaintiffs and similarly situated workers as that term is defined in the FLSA, 29 U.S.C. §203(d).

10. <u>Defendant Justin Giallonardo</u> is a person of the full age of majority maintaining a residence in the Western District of Louisiana. He is a manager, officer, director, and part owner of the LLC defendants. Upon information and belief, he exercised operational control over significant aspects of the LLC Defendants' day-today functions and is therefore individually liable for any violation of the FLSA. During all periods relevant to this litigation, he was an "employer" of Plaintiffs and similarly situated workers as that term is defined in the FLSA, 29 U.S.C. §203(d).

11. D'Argent Franchising, LLC, Defendant D'Argent Construction, LLC, and D'Argent Companies, LLC (together, the "LLC Defendants") are part of an integrated enterprise known as the D'Argent Companies ("D'Argent").

12. <u>Putative Class Members</u>: The class of similarly situated employees ("Putative Class Members") consists of:

> All non-exempt individuals who (a) are or were employed by Defendants D'Argent Franchising, LLC, D'Argent Construction, LLC, or D'Argent Companies, LLC at any point from three years prior to the date of filing this complaint up to and including the date of final judgment in this matter, and (b) and who are the Named Plaintiffs and those who elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b).

13. Made Defendant herein is <u>XYZ Insurance Company</u>, which, upon information and belief, is the insurer providing coverage to Defendants for acts or omissions of officers and directors like the above-named Defendants.

### III.   FACTS

**A.   D'Argent Deleted All Hours Franchising Employees Worked Over 40 Per Week.**

14. D'Argent Franchising, LLC owns two franchises – a Huddle House and a CC's Coffee.

15. Employees working at these franchises would clock-in and clock-out using last four digits of their social security number in an electronic time management system called "Aloha."

16. Employees working at these franchises would routinely work more than forty hours in a week.

3

17. But D'Argent has a policy of not paying overtime to its workers. That policy is not limited to not paying time-and-a-half for overtime hours; it means D'Argent will not pay workers *at all* for hours worked over 40 in a week.

18. This is testified to by Wes Pigott, the former manager of D'Argent's Huddle House franchise.

19. In the sworn affidavit attached Exhibit A, Mr. Pigott explains what happens. (Elements of the affidavit not relevant to this lawsuit have been redacted.)

20. Manager Pigott was instructed by his supervisor, Justin Giallonardo to "delete any employee hours over forty hours per week."

21. Per Justin Giallonardo's instructions, every two weeks Mr. Pigott would use Aloha to call up a "payroll report." If any employee had worked more than forty hours per week, he would use the "edit punch" functionality to reduce their hours to forty hours. He would then send the hours from Aloha to the Heartland payroll system to be paid.

22. He thought this was wrong, and so one month he stopped doing it. Justin Giallonardo punished and retaliated against Pigott by deducting approximately $8,000 from his paychecks – which was the amount of the overtime that he did not delete over a period of time.

23. Pigott estimates that over the course of her work at Huddle House, he deleted in excess of $10,000 of overtime for named plaintiff Samantha Williams alone.

24. Plaintiff Samantha Williams has specific knowledge that all of her co-workers were subjected to the same chronic labor violations she suffered, costing these employees earned wages.

25. Williams allegations and Pigott's testimony is corroborated by the statement of another D'Argent manager, who says that D'Argent had a "policy" of not paying overtime even if employees worked overtime.

**B.     D'Argent Construction, LLC Workers Are Not Paid for Overtime Work.**

26.    Dakota Fisher worked for D'Argent Construction, LLC from January to early March 2020.

27.    Mr. Fisher would routinely work more than 40 hours per week, without being paid for any hours over 40. Sometimes he would work as many as 70 hours per week and not get any overtime.

28.    Mr. Fisher as specific knowledge that all of his co-workers were subjected to the same chronic labor violations he suffered, costing these employees earned wages.

29.    D'Argent's former accountant, who performed accounting work for all LLC Defendants, confirmed that D'Argent engages in consistent and willful FLSA violations. She described how D'Argent also did not pay overtime to any main office employee, but *would* dock their pay by the hour if they worked less than eight hours in any day.

30.    The accountant also raised the issue of unpaid overtime violations with Justin Giallonardo. However, he refused to change his practice.

31.    Several other D'Argent Construction LLC workers have also confirmed they frequently worked more than forty hours per week, but were not paid for any hours over forty, corroborating the factual allegations of Plaintiffs and the former accountant.

32.    The refusal to pay overtime is D'Argent's *explicit, written policy*. Page 12 of D'Argent's manual says the following:

> Salaried – A full-time employee is one who works a minimum of 40 hours in a pay period. A salaried employee may be hired or promoted to such status. This excludes employees who have been hired as a temporary employee. **Salaried employees are not allowed overtime compensation**

33.    The FLSA requires that workers be paid time-and-a-half for hours worked in excess of 40 hours per week, unless they meet three criteria: (1) the employee must be paid a predetermined and fixed salary that is not subject to reduction because of variations in the quality or quantity of work; (2) the amount of salary paid must meet a minimum specified amount (currently $35,568); and

5

(3) the employee's job duties must primarily involve executive, administrative, or professional duties as defined by the regulations.[1]

34.     No named Plaintiff or Putative Class Member fall within any exemption of the FLSA.

35.     Thus, just being paid on a salary basis does not in and of itself exempt a worker from overtime requirements. D'Argent's written policy violates the FLSA.

C.     **D'Argent Committed Deliberate Spoliation of Evidence[2]**

36.     D'Argent generally engaged in deliberate spoliation of evidence by deleting hours worked over forty from the Aloha time-management system.

37.     Furthermore, in 2020, Justin Giallonardo, after finding out that a D'Argent employee had filed a charge against D'Argent, called into his office and said that he expected a lawsuit. He told the managers that "What I need y'all to do is go to your computers and go into Heartland [the payroll system] and make everyone part time. The only full-time employees we need to have is the managers. We have to make everything separate." The managers described Justin Giallonardo as treating this "like a 911 deal" – *i.e.*, an emergency. Justin explained that it was because the employee "was coming after him."

38.     After that point, upon information and belief, Justin Giallonardo made an effort to change things with the goal of "making everything separate" between the LLCs. For example, Justin previously had "D'Argent Companies" Sam's Club cards for the franchise restaurants, and subsequently, he changed it to "D'Argent Franchising." However, the illegal practices and labor violations remained constant throughout all areas of the several companies.

---

[1] Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 84 FR 51230 (09/27/2019)
[2] See 29 C.F.R. § 516.2.

## IV. CLAIMS

### Count 1: Violation of the FLSA and Retaliation

39. At all times hereinafter mentioned, Defendants have been employers within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

40. At all times hereinafter mentioned, Defendants have been enterprises within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

41. At all times hereinafter mentioned, Defendants have been enterprises engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprises have and have had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprises have had and have an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

42. At all times hereinafter mentioned, Plaintiffs and all those similarly situated were individual employees engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.23.

43. Defendants' managers and officers directed the means and manner in which Plaintiffs were compensated. During the relevant time period, Defendants have violated, and are violating, the provisions of Sections 6 and/or 7 of the FLSA, 29 U.S.C. §§ 206, 207, and 215(a)(2), by employing employees engaged in commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating such employees minimum wages and/or for their employment in excess of 40 hours per week at rates no less than one and one-half the regular rates for which they were employed.

44. Defendants' failure to properly pay their employees was done so knowingly, willfully

or in reckless disregard in carrying out its illegal pattern or practice. Labor audits and employee pleas have had no impact on Defendants' chronic practice of labor abuse. The decision by Defendants not to properly pay minimum and/or overtime compensation to its hourly employees was neither reasonable, nor in good faith. Accordingly, Plaintiffs and all those who are similarly situated are entitled to wages under the FLSA in an amount equal to one and one-half times their rate of pay, plus liquidated damages, attorney's fees and costs.

45. Defendants punished and retaliated against Wes Pigott after Mr. Pigott refused to carry out Defendants' instructions of continued FLSA violations, egregious conduct which included deducting approximately $8,000 from Mr. Pigott's earned wages personally.

46. Defendants had a policy of retaliation and punishment in direct violation of 29 USC 215(a)(3) for those who complained of and attempted to hold Defendants accountable for Defendants' FLSA violations. These retaliatory actions included, but were not limited to, direct deductions in employee wages and recorded hours.

47. By intentionally deleting records of hours worked, Defendants failed and/or refused to maintain adequate records as required under the FLSA.

48. Plaintiffs and the members of the putative class do not fall within any exemption of the FLSA and were required to be paid according to the dictates of that section.

### Count 2 - Conversion and Misappropriation

49. Plaintiffs incorporate by reference and re-allege each and every allegation contained above as though fully set forth herein.

50. Defendants' actions in withholding monies from employee paychecks, which said employees were owed, amounts to their conversion of funds under Louisiana law. See La. Civ. Code art. 2315.

### Count 3- Failure to Pay Wages Under LA. R.S. 23:621 *ET. SEQ.*

51. Plaintiffs incorporate by reference and re-allege each and every allegation contained

above as though fully set forth herein.

52. Upon termination of an employee's employment, Defendants have refused to pay all past due earned wages to said employees.

53. Defendants' refusal to remit all of an employee's overdue wages within fifteen (15) days of termination of their employment is a violation of Louisiana law.  This remedy is in addition to those provided for by the minimum and overtime wages under the FLSA.

54. On November 5, 2020, Plaintiff's counsel sent D'Argent's counsel an amicable letter explaining that "D'Argent had a 'policy' of not paying overtime even if employees worked overtime. That was true with Ms. Williams. During the course of her employment she routinely worked between 10 and 12 hours a day, 7 days a week. However, she only received hourly wages for 40 hours per week, and was not paid overtime."

55. On November 12, 2020, Plaintiff's counsel sent D'Argent's counsel a second amicable letter asking D'Argent to "please pay Ms. Williams her wages through her date of resignation to avoid penalties and attorneys fees."

56. Defendants refuse to provide any moneys in response to either amicable demand letter, thereby constituting a specific violation of the Louisiana Wage Payment Act.

57. This petition serves as a third amicable demand for D'Argent to remit all due wages to those who's employment has been terminated.  Failure to pay said wages results in penalties, calculated at the employees properly calculated rate of pay, costs, and attorneys' fees pursuant to La. R.S. 23:632.

### Count 4 - Louisiana Unfair Trade Practices Act

58. Plaintiffs incorporate by reference and re-allege each and every allegation contained above as though fully set forth therein.

59. Defendants' choice to affirmatively delete hours worked is "unethical, oppressive, unscrupulous, or substantially injurious" conduct that triggers LUTPA. *Chem. Distributors, Inc. v. Exxon Corp.*, 1 F.3d 1478, 1485 (5th Cir. 1993).

60. Defendants' choice to retaliate against Wes Pigott, and potential others, who opposed the FLSA violations is "unethical, oppressive, unscrupulous, or substantially injurious" conduct that triggers LUTPA.

61. Defendants' choice to commit intentional spoliation (see Count 5, *infra*) is "unethical, oppressive, unscrupulous, or substantially injurious" conduct that triggers LUTPA.

### Count 5 – Intentional Spoliation

62. A "state law tort claim for spoliation of evidence" exists when a "defendant intentionally destroyed evidence." *Longwell v. Jefferson Par. Hosp. Ser. Dist.*, 970 So.2d 1100, 1104 (La. App. 2007).

63. Here, Defendants intentionally destroyed evidence when they instructed managers to delete hours worked from Aloha.

64. Defendants intentionally destroyed evidence when they instructed managers change the classification of workers in the payroll system.

65. Defendants destroyed evidence when they changed documents, memberships, and other items in an effort to make the LLCs appear "separate" when they were not, in response to a threatened lawsuit.

66. Defendants engaged in deliberate attempted witness tampering and spoliation of evidence when they filed a police report against and urging prosecution of witness Ricky Molina shortly after finding out he was a witness against Defendants.

## V. Collective Action Allegations

67. Defendants employed Plaintiffs and those similarly situated and were responsible for establishing and administering pay policies and practices, including pay classifications, salaries and overtime pay rates, during all times relevant to this Complaint

68. Defendants implemented a common plan, policy and practice of not paying employees for any hours worked over 40.

69. They maintained this illegal plan, policy and practice even after being advised by persons, including Defendants' own accountant, that this was improper.

70. Numerous employees have been victimized by this pattern, practice and policy which are in willful violation of the FLSA. Many of these employees have worked with the named Plaintiffs, and named Plaintiffs have reported that the Putative Class Members were paid in the same manner and were not properly compensated for all hours worked as required by the FLSA. Thus, from their observations and discussions with these employees, Plaintiffs are aware that the illegal practices or policies of Defendants have been imposed on the Putative Class Members.

71. The Putative Class Members are all non-exempt employees who worked in excess of 40 hours per week, but were not fully compensated. These employees are victims of Defendants' unlawful compensation practices and illegal pay schemes and are similarly situated to the Plaintiffs in terms of job duties, pay provisions and employment practices.

72. Defendants' failure to pay wages at the rates required by the FLSA result from generally applicable, systematic policy and practice and which is not dependent on the personal circumstances of the Putative Class Members. Thus, Plaintiffs' experiences are typical of the experiences of the Putative Class Members.

73. The specific job titles or precise job requirements of the various Putative Class Members does not prevent collective treatment. All of the Putative Class Members, regardless of their

precise job requirements or rates of pay, are entitled to be properly compensated. Although the issue of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

74. Plaintiffs bring this action on behalf of themselves and the class as a collective action pursuant to the FLSA, 29 U.S.C. §§ 206, 207, and 216(b).

75. The claims under the FLSA may be pursued by those who opt-in to this case under 29 U.S.C. § 216(b).

76. The members of the class are so numerous that joinder of all other members of the class is impracticable. While the exact number of the other members of the class is unknown to Plaintiff at this time and, can only be ascertained through applicable discovery, Plaintiff believes there are more than 30 individuals in the class.

77. The claims of Plaintiffs are typical of the claims of the class. The "No Overtime" policy applied to Plaintiffs as well as other class-members.

78. Common questions of law and fact exist as to the class which predominate over any questions only affecting other members of the class individually and include, but are not limited to, the following:

    A. Whether Plaintiffs and other members of the class were misclassified as exempt from the FLSA.

    B. Whether Plaintiffs and other members of the class were expected and/or required to work hours without compensation;

    C. Whether Defendants suffered and permitted Plaintiffs and other members of the class to work hours without proper compensation;

    D. Whether Defendants failed to pay Plaintiffs and other members of the class all overtime compensation due them for all hours worked in excess of forty (40) hours per week;

    E. The correct statutes of limitations for Plaintiffs' claims and the claims of the other members of the class;

    F. Whether Plaintiffs and other members of the class are entitled to damages, including but not limited to liquidated damages, and the measure of the damages; and,

    G. Whether Defendants are liable for interest, attorneys' interest, fees, and costs.

79. Plaintiffs will fairly and adequately protect the interests of the class as their interests are aligned with those of the other members of the class. Plaintiffs have no interests adverse to the class and, Plaintiffs have retained competent counsel who are experienced in class action litigation.

80. At all times relevant, Defendants did not have a good faith basis for its failure to pay the federal applicable overtime compensation to Plaintiffs and other members of the class for all hours worked in excess of forty hours per week.

## RELIEF REQUESTED

81. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all questions of fact raised by the complaint.

82. Wherefore Plaintiff requests judgment be entered against Defendants and that the Court grant the following:

    A. Designation of this cause as a collective action on behalf of the class and promptly issue notice pursuant to 29 U.S.C. § 216(a), apprising class members of the pendency of this action and permitting other members of the class to assert timely FLSA claims in this action by filing individual Consents under 29 U.S.C. § 216(b);

B. For an Order pursuant to Section 16(b) of the FLSA finding Defendant liable for unpaid back wages due to Plaintiffs (and those who have joined in the suit) and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiffs;

C. For an Order awarding Plaintiff (and those who have joined in the suit) the costs of this action;

D. For an Order awarding Plaintiff (and those who have joined in the suit) their attorneys' fees;

E. For an Order awarding Plaintiff unpaid benefits and compensation in connection with the FLSA violations;

F. For an Order awarding Plaintiff (and those who have joined in the suit) post-judgment interest at the highest rates allowed by law;

G. Punitive damages for Defendants' retaliation against Plaintiffs per 29 USC 215(a)(3) as called for and described under 29 USC 216(b);

H. An order of sanctions for Defendants' intentional spoliation of evidence;

I. All damages as called for in the FLSA;

J. All relief as allowed under applicable Louisiana law, including late payment penalties and attorneys' fees pursuant La. R.S. 23:632, and all damages allowed by law related to Defendants' conversion, retaliation, unjust enrichment, and violations of the Louisiana Unfair Trade Practices Act, including attorneys' fees and costs where appropriate;

K. Declaratory relief;

L. Judgment against Defendants for Plaintiff's asserted causes of action; and

M. Order such further relief, at law or in equity, to which Plaintiffs may be entitled.

Respectfully Submitted,

| | |
|---|---|
| */s/ William Most* | */s/ Kenneth C. Bordes* |
| William Most (La. Bar No. 36914) | Kenneth C. Bordes (Bar #35668) |
| Hope Phelps (La. Bar No. 37259) | Kenneth C. Bordes, Attorney at Law, LLC |
| David Lanser (La. Bar No. 37764) | 2725 Lapeyrouse St. |
| Law Office of William Most | New Orleans, LA 70119 |
| 201 St. Charles Ave. Suite 114 #101 | P: 504-588-2700 |
| New Orleans, LA 70170 | F: 504-708-1717 |
| (504) 509-5023 | E: kcb@kennethbordes.com |
| williammost@gmail.com | |