## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SAMANTHA WILLIAMS,** | **CIVIL ACTION: 20-cv-1501** |
| **DAKOTA FISHER, individually** | |
| **And on behalf of those similarly** | **HON. DAVID C. JOSEPH** |
| **Situated, and WES PIGOTT,** | **MAG. JOSEPH H.L. PEREZ-MONTES** |
| | |
| **VERSUS** | |
| | **JURY TRIAL DEMANDED** |
| **D'ARGENT FRANCHISING, LLC,** | |
| **D'ARGENT CONSTRUCTION, LLC,** | **Putative Collective Action** |
| **THOMAS GIALLONARDO, III,** | **Pursuant to 29 U.S.C. § 216(b)** |
| **JUSTIN GIALLONARDO, and** | |
| **XYZ INSURANCE CO.** | |

---

### MEMORANDUM IN SUPPORT OF PLAINTIFFS'
### MOTION FOR CONDITIONAL CERTIFICATION AND EQUITABLE TOLLING,
### OR IN THE ALTERNATIVE, EQUITABLE TOLLING

---

Plaintiffs Samantha Williams and Dakota Fisher (collectively "Plaintiffs"), bring this collective action against Defendants D'Argent Franchising, LLC, D'Argent Construction, LLC, Thomas Giallonardo, III, Justin Giallonardo (collectively, "D'Argent" or "Defendants"), to challenge Defendants' common policy and practice of failing to compensate their employees properly for overtime hours worked. Specifically, Plaintiffs, on behalf of themselves and all others similarly situated (D'Argent employees), allege that Defendants employed an illegal company-wide scheme and/or common policy of failing to pay their employees for hours worked in excess of forty in a workweek at one and one-half times their regular hourly rate, and manipulation and destruction of records related to hours worked, in violation of the Fair Labor Standards Act ("FLSA").

Plaintiffs have conferred with Defendants, through prior counsel and current counsel, sending draft tolling stipulations through each respectively. Each time the offer to stipulate to conditional certification and/or tolling has been rejected by Defendants, prompting this motion.

Plaintiffs now move for an expedited consideration on conditional certification and equitable

1

tolling related to the following class of putative Opt-In Plaintiffs:

> All employees who are or were employed by Defendants D'Argent Franchising, LLC, D'Argent Construction, LLC, or D'Argent Companies, LLC at any point from three years prior to the date of filing this Complaint to the present (November 21, 2017 to present), who have worked over 40 hours in at least one workweek from November 21, 2017 to the present, and who were subject to the pay practices of D'Argent Franchising, LLC, D'Argent Construction, LLC, or D'Argent Companies, LLC during that time.

In support of their Motion, Plaintiffs offer this Court their own declarations, the declarations of two former D'Argent managers who confess to deleting overtime hours, and D'Argent's explicit, written policy of not paying overtime to salaried workers.  As these evidentiary Declarations and the following analysis demonstrate, Defendants' common pay schemes failed to compensate Plaintiffs and their similarly situated employees for overtime hours at the rates they are entitled by federal law to receive.

# TABLE OF CONTENTS

Preliminary Statement…………………………………………………………....….1

Table of Contents…………………………………………………………....……..3

Table of Authorities…………………………………………………....…………….4

I.  Introduction……………………………………………………….…………6
    A.  Evidence of D'Argent's Common Practice of Not Paying For Overtime……....…....6
    B.  D'Argent's Actions Continue to Aggrieve Putative Class Members……………………8

II. Conditional Certification is Warranted under the Fifth Circuit's Recent Decision in
    *Swales v. KLLM Transp. Servs.*…………………………………………………....9
    A.  *Lusardi* to *Swales* and Forward……………………………………………….10
    B.  A District Court has Wide Discretion to Facilitate Notice…………………………12
    C.  Evidence Supports Conditional Certification…………………………………….13

III. The District Court also has Discretion to Equitably Toll a Collective Action to Avoid
     Prejudice from the Unique Procedural Posture of Collective Actions Under § 216(b)…13
    A.  Equitable Tolling as Applied to the FLSA…………………………………….....15
    B.  Filing/Opting-In……………………………………………………………….16
    C.  Tolling Agreements Between Parties……………………………………..…….16
    D.  Tolling by Court Order……………………………………………..….…….18

IV. Equitable Tolling is Appropriate Due to Defendants' Actions…………………………19

V.  Conclusion and Relief Sought…………………………………………………..20

# TABLE OF AUTHORITIES

**Case Law**

*Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516 (5th Cir.2010)……………………………………………10

*Alaniz v. Gordon Reed & Assoc.*, 18-cv-1595 (March 9, 2020 W.D. La.)…………………………………………...10

*Am. Pipe Construction Co. v. Utah*, 414 U.S. 538 (1974)……………………………………………………………15

*Antonio-Morales v. Bimbo's Best Produce, Inc.*, 2009 WL 1591172 (E.D. La. Apr. 20, 2009)…………………………18

*Archon v. Taylor & Tyler Inc.*, CIV. NO. 18-6854 (B)(5) (October 16, 2018 E.D. La.)………………………………16

*Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147 (1984)………………………………………………………15

*Barrus v. Dick's Sporting Goods, Inc.*, 465 F. Supp. 2d 224 (W.D.N.Y. 2006)………………………………………12

*Beall v. Tyler Technologies, Inc.*, 2009 WL 3064689 (E.D. Tex. 2009)………………………………………………21

*Bridges v. Absolute Lawn Care La., LLC*, 2016 U.S. Dist. LEXIS 151078 (E.D. La. Nov. 1, 2016)………………12

*Carr v. AutoZone, LLC*, CIV. NO. 15-cv-00356 (Nov. 20, 2020 N.D. Ala.)…………………………………16, 17

*Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914 (D. Ariz. 2010)…………………………………………………………12

*Crown, Cork Seal Co., Inc. v. Parker,* 462 U.S. 345 (1983)…………………………………………………………15

*Davis v. Narron*, No. 5:19-cv-262 (Dec. 15, 2019 E.D.N.C)……………………………………………………....16

*Davis v. Westgate Planet Hollywood Las Vegas, LLC.*, 2009 WL 102735 (D. Nev. 2009)……………………………21

*Gremillion v. Cox Comm'ns La.*, CIV. NO. 16-9849 (June 22, 2017 E.D. La.)……………………………………16

*Halferty v. Pulse Drug Co., Inc.*, 821 F.2d 261 (5th Cir. 1987)……………………………………………………15

*Headspeth v. Tpusa, Inc.*, CIV. NO. 19-cv-2062 (October 9, 2019 S.D. Ohio)……………………………………17

*Hernandez v. Pritchard Indus. (Sw.), LLC*, No. SA-20-CV-00508-XR, 2021 WL 1146005 (W.D. Tex. Mar. 25, 2021) (J. Rodriguez)……………………………………………………………………………………………....11

*Hoffmann—La Roche Inc. v. Sperling*, 493 U.S. 165 (1989)…………………………………………………9, 12

*In re Sanjel (USA) Inc.*, CIV. NO. 16-50778 (July 28, 2016 Bankr. W.D. Tex.)……………………………………18

*Jewell Ridge Coal Corp. v. Local No. 6167, United Mine Workers of Am.*, 325 U.S. 161 (1945)………………………...14

*Klick v. Cenikor Found.*, CIV. NO. 19-cv-1583 (December 23, 2020 S.D. Tex.)…………………………………...18

*LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286 (5th Cir. 1975)…………………………………………………15

*Lima v. Int'l Catastrophe Sols., Inc.,* 493 F.Supp.2d 793 (La. E.D. 2007)…………………………………………15

*Lusardi v. Xerox Corporation*, 118 F.R.D. 351 (D.N.J. 1987)……………………………………………………10

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988)………………………………………………………...15

*Mejia v. Brothers Petroleum, LLC,*' Civ. A. No. 12-2842, 2014 WL 3853580 (E.D. La. Aug. 4, 2014)………….....14, 19

*Mooney v. Aramco Servs. Co.*, 54 F.3d 1207 (5th Cir.1995)……………………………………………...9, 10

*Moore v. MW Servicing, LLC*, No. CV 20-0217, 2021 WL 971727(E.D. La. Mar. 15, 2021) (J. Guidry)………...11, 12

*Moreau v. Medicus HealthCare Sols., LLC*, No. 20-CV-1107-JD, 2021 WL 919869 (D.N.H. Mar. 10, 2021)………...11

*Pace v. DiGuglielmo*, 544 U.S. 408 (2005)………………………………………………………………19

*Pacheco v. Rice*, 966 F.2d 904 (5th Cir. 1992)……………………………………………………...19

*Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369 (5th Cir. 2019)………………………………...14

*Sandoz v. Cingular Wireless, L.L.C.*, 700 F. App'x 317 (5th Cir. 2017)………………………………………19

*Scalia v. Sofia & Gicelle, Inc.*, CIV. NO. 19-0934 (December 30, 2020 D. Md.)…………………………..…17

*Shidler v. Alarm Sec. Grp., LLC*, 919 F.Supp.2d 827 (S.D. Tex. 2012)……………………………………14, 18

*Stanfield v. First NLC Fin. Servs., LLC*, 2006 U.S. Dist. LEXIS 98267 (N.D. Cal. Nov. 1, 2006)……………...…12

*Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430 (5th Cir. 2021)…………………………………….......passim

*Teemac v. Henderson*, 298 F.3d 452 (5th Cir.2002)…………………………………………………..19

*Torres v. Dino Palmeri Salons, Inc.*, CIV. NO. 19-0934 (December 18, 2019 N.D. Ohio)…………………………17

*United States v. Patterson*, 211 F.3d 927 (5th Cir. 2000)…………………………………………………...18

*Walker v. HongHua Am., LLC*, 870 F. Supp. 2d 462 (S.D. Tex. 2012)……………………………………...12

*Weisgarber v. N. Am. Dental Grp.*, CIV. NO. 19-0934 (March 20, 2020 N.D. Ohio)…………………………...17

*White v. Integrated Elec. Techs., Inc.*, No. CIV.A. 11-2186, 2015 WL 4254123 (E.D. La. July 13, 2015)……………...16

*Xavier v. Belfor USA Group, Inc.*, 585 F.Supp.2d 873 (E.D. La. 2008)……………………………………....9

## Statutory Authority

29 C.F.R. § 516.2……………………………………………………………………………...8

29 U.S.C. § 216(b)……………………………………………………………………...9, 12, 18

29 U.S.C § 255…………………………………………………………………………………15

29 U.S.C. § 256…………………………………………………………………………………16

## Other Authorities

Fed. R. Civ. P. 23…………………………………………………………………………...…..9, 15

## I.     INTRODUCTION

### A.     EVIDENCE OF D'ARGENT'S COMMON PRACTICE OF NOT PAYING FOR OVERTIME

Defendants are collectively an organization called the D'Argent Companies ("D'Argent"). D'Argent has three wings to its organization – a construction business under the name of D'Argent Construction, LLC, a franchising business under the name of D'Argent Franchising, LLC, and a real estate development business under the name of D'Argent Companies, LLC.

D'Argent owns two franchises – a Huddle House and a CC's Coffee. Rec. Doc. 1, ¶ 14. Employees working at these franchises would clock-in and clock-out using last four digits of their social security number in an electronic time management system called "Aloha." *Id.* ¶ 15. Employees working at these franchises would routinely work more than forty hours in a week. *Id.* ¶ 16.  But D'Argent has a policy of not paying overtime to its workers. *Id.* ¶ 17.

That policy is not limited to not paying time-and-a-half for overtime hours; it means D'Argent will not pay workers *at all* for hours worked over 40 in a week.  This is testified to by Wes Pigott and Richard Molina, two former managers of D'Argent's Huddle House and CC's Coffee franchises. In the sworn affidavit attached as to the Complaint, Mr. Pigott – a former manager – explains the illegal policies and schemes. Rec. Doc. 1-2 at ¶¶ 2-8 (unredacted version attached as Ex. E).  Manager Pigott was instructed by his supervisor, Justin Giallonardo to "delete any employee hours over forty hours per week." *Id.* ¶ 5.

Per Justin Giallonardo's instructions, every two weeks Mr. Pigott would use Aloha to call up a "payroll report." *Id.* ¶ 6. If any employee had worked more than forty hours per week, he would use the "edit punch" functionality to reduce their hours to forty hours. *Id.*  He would then send the hours from Aloha to the Heartland payroll system to be paid. *Id.*  Mr. Pigott thought this was wrong, and so one month he stopped doing it and, as a result, Justin Giallonardo punished and retaliated against Pigott by deducting approximately $8,000 from his paychecks – which was the amount of the overtime that Pigott did not delete over a period of time. *Id.* ¶ 7.

6

Pigott estimates that over the course of Plaintiff Williams' work at Huddle House, he deleted in excess of $10,000 of overtime for named plaintiff Samantha Williams alone. *Id.* ¶ 8. P

Pigott's testimony is corroborated by the statement of another D'Argent manager – not a party to these proceedings – who testifies that "[n]ot only was D'Argent not paying time-and-a-half for overtime hours, it was D'Argent policy not to pay *at all* for overtime hours. Ex. A (Molina Dec.) at ¶ 7 (emphasis in original). .  He explains:

> [W]hen I was managing the CC's Coffee House, my subordinates would often work more than 40 hours in a week. To comply with D'Argent's policy of not paying overtime, I would sometimes delete hours in the Brinks Point of Sale system, reducing the hours down to 40. I would then enter 40 hours into the Heartland system, and the employee would be paid for only 40 hours. Other times, if an employee hit 40 hours, I would just tell them not to clock-in for the rest of their hours that week – but they still had to keep working.

*Id.* at ¶¶ 8-10.

D'Argent's salaried main office workers were similarly denied overtime pay; indeed, the refusal to pay overtime is D'Argent's *explicit, written policy*.  D'Argent's manual says the following:

Salaried – A full-time employee is one who works a minimum of 40 hours in a pay period. A salaried employee may be hired or promoted to such status. This excludes employees who have been hired as a temporary employee. **Salaried employees are not allowed overtime compensation**

Ex. D at pg. 12.

But as Defendants are well aware, being paid on a salary basis does not in and of itself exempt a worker from overtime requirements.

Plaintiffs Samantha Williams and Dakota Fisher were two of the workers denied overtime under these D'Argent policies. See Ex. B (Dec. of Williams) and Ex. C (Dec. of Fisher). Ms. Williams, in her role as a management trainee, also saw D'Argent's payroll records and observed that workers were not getting paid for hours they worked over forty in a week. Ex. B at ¶ 7. She also overheard Justin Giallonardo direct the franchise managers to not pay overtime. *Id.* at ¶ 8. Fisher, who worked primarily as a construction worker, would work as much as 70 hours in a week, but not be paid for the hours over 40.

Ex. C at ¶¶ 5-6. He testifies that he was not alone; his co-workers were also denied any overtime pay. *Id.* at ¶ 7.

**B.     D'ARGENT'S ACTIONS CONTINUE TO AGGRIEVE PUTATIVE CLASS MEMBERS**

D'Argent has also engaged in deliberate spoliation of evidence by deleting hours worked over forty from the Aloha time-management system. See 29 C.F.R. § 516.2; Rec. Doc. 1-2 at ¶ 6 (testimony of Wes Pigott that he deleted workers' overtime hours); Ex. A at ¶ 9 (testimony of Richard Molina that he deleted workers' overtime hours).   Furthermore, in 2020, Justin Giallonardo, after finding out that a D'Argent employee had filed a charge against D'Argent, called employees into his office and said that he expected a lawsuit. Ex. A at ¶ 12; Ex. E at ¶ 9.  He told the managers that "What I need y'all to do is go to your computers and go into Heartland [the payroll system] and make everyone part time. The only full-time employees we need to have is the managers. We have to make everything separate." Ex. E at ¶ 9.  Justin explained that it was because the employee "was coming after him." *Id.* ¶ 10.

Furthermore, on December 9, 2020, counsel for Plaintiffs contacted D'Argent's counsel in light of these allegations and in concern for class member rights.  Pursuant to that conversation, D'Argent's counsel requested a draft of a tolling agreement which was provided the very next day, December 10, 2020.  Ex. F. On January 21, 2021, Plaintiff's counsel again raised tolling, and D'Argent's counsel said they would look into it. On February 23, 2021, Defendants finally said they "cannot agree to consent to tolling or to a putative collective." Ex. G.

On February 24, 2021, Plaintiffs propounded discovery aimed, in part, at characterizing the putative class. Ex. H. Plaintiff's invited Defendants to confer any issues they had, so as "to work out any issues in advance." *Id.*  Defendants declined to confer.

More than a month later, on April 5, 2021, D'Argent explained that it would not yet respond to the Requests for Production. Defendants claimed that the reason for their non-response was to assess "preliminary discovery regarding the facts material to the question of whether and who is similarly

situated" and to assess "search terms, custodians, and date ranges for appropriate ESI," alluding to *Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430 (5th Cir. 2021). See Ex. H.

But the Fifth Circuit's decision in *Swales* has not resulted in a procedural landscape where a defendant can refuse to respond to discovery, or dictate the frequency or necessity of discovery in a case.

And furthermore, because of the already-obtained and documented evidence discovered pertaining to Defendants' common policy and practice of FLSA violations across the board in deleting hours and misclassifying employees, Plaintiffs contend there is ample evidence for the Court to grant conditional certification at this stage, as other district courts have also done post-*Swales*.

Finally, because of Defendants' multiple refusals to consider stipulations and/or tolling agreements, and their refusal to tender responsive documents in response to Plaintiffs' Requests for Production, a tolling agreement is the only way possible for Putative Class Members, who are unaware of the violations they have been subjected to, to preserve their rights pending a Court-Ordered Notice.

## II.   CONDITIONAL CERTIFICATION IS WARRANTED UNDER THE FIFTH CIRCUIT'S RECENT DECISION IN *SWALES v. KLLM TRANSP. SERVS.*

The Supreme Court has recognized that, in appropriate cases, federal district courts have the discretion to facilitate notice to potential plaintiffs as a means of implementing the remedies afforded under 29 U.S.C. § 216(b). *Xavier v. Belfor USA Group, Inc.*, 585 F.Supp.2d 873, 876 (E.D. La. 2008) (citing *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165,167 (1989)). Unlike a Rule 23 class action, brought in accordance with the Federal Rules of Civil Procedure and which binds all class members, a collective action under §216(b) requires similarly situated employees to affirmatively "opt in" to the litigation by submitting consent in writing to the court. *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir.1995).

However, the Fifth Circuit's January 12, 2021 decision in *Swales v. KLLM Transp. Servs., LLC*, has addressed "certification" and "notice" for a collective action under §216(b). 985 F.3d 430 (5th Cir. 2021). The Fifth Circuit's reasoning in *Swales* has resulted in three ascertainable holdings: a) the widely accepted, long-standing *Lusardi* "two-step" has been rejected as the governing "standard" to be used in district

courts, b) "the district court, not the standards from *Lusardi*, should dictate the amount of discovery needed to determine" conditional certification and notice, and c) the district court otherwise has broad litigation management to ensure the broad remedial measures of the FLSA are fairly carried out. *Id.*

### A.  *LUSARDI* TO *SWALES* AND FORWARD

Through the years, the Fifth Circuit has analyzed and acknowledged the two-tiered *Lusardi* approach widely adopted by district courts for conditional class certification. *Mooney*, 54 F.3d at 1213-14 (5th Cir.1995) ("Under *Lusardi*, the trial court approaches the 'similarly situated' inquiry via a two-step analysis."). The Western District of Louisiana, like all other Fifth Circuit district courts, recognized *Lusardi* as the most effective method in determining "whether to certify a collective action and thus send notice of the suit to potential opt-in plaintiffs," noting that "the majority of federal courts follow the two-step approach developed in *Lusardi v. Xerox Corporation*, 118 F.R.D. 351 (D.N.J. 1987)." *Alaniz v. Gordon Reed & Assoc.*, 18-cv-1595 (March 9, 2020 W.D. La.) citing *Mooney*, 54 F.3d at 1213.

The two stages of the *Lusardi* approach are the "notice stage" and the "decertification stage." *Mooney*, 54 F.3d at 1216. The first *Lusardi* step is to decide whether to issue notice to potential class members in order to apprise them of their rights. *See id.* at 1213-14. At the "notice stage," the district court "determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 (5th Cir.2010). Although this stage employed a "fairly lenient" standard, it did require substantial allegations that potential members "were together the victims of a single decision, policy, or plan...." *Mooney*, 54 F.3d at 1214 n.8.  In short, *Lusardi* was accepted as most efficient and fair way to facilitate notice while keeping in mind the rights of putative class members, litigants, and the court's discretionary oversight.

Regardless of how district courts understand the appropriateness and application of *Lusardi*, the Fifth Circuit states, "[w]e have 'carefully avoided adopting' *Lusardi*, and our avoidance should not be

misconstrued as acquiescence. And now that the question is squarely presented, we reject *Lusardi*." *Swales*, 985 F.3d at 434, 439.

However, that does not mean a district court now abuses discretion by considering *Lusardi* and its progeny. As the Fifth Circuit clarifies, district courts are simply "not captive to *Lusardi* or any 'certification' test." *Id.* at 443. In fact, federal courts interpret *Swales* "rather than suggesting that the court should first consider a dispositive motion on the classification issue, the Fifth Circuit emphasized that the determination of whether to proceed as a collective action **must be made as early as possible in the case.** *Moreau v. Medicus HealthCare Sols., LLC*, No. 20-CV-1107-JD, 2021 WL 919869, at *2 (D.N.H. Mar. 10, 2021) (emphasis) citing *Swales*, 985 F.3d at 441.

District courts in the Fifth Circuit post-*Swales* agree. Since *Swales*, district courts have acted to conditionally certify appropriate cases (some even still citing *Lusardi*) and grant conditional certification in cases just like this – where ex-employees in unique positions evidence direct knowledge of company-wide violations. No additional analysis is needed when "declarations—especially that of a former Accounting Manager—go beyond general allegations by specifically detailing Defendant's instructions for imposing an unlawful, company-wide policy…These first-hand accounts thus create a reasonable basis to crediting Plaintiffs' assertion that putative class members exist." *Moore v. MW Servicing, LLC*, No. CV 20-0217, 2021 WL 971727, at *3 (E.D. La. Mar. 15, 2021) (J. Guidry).[1] This makes sense, because no defendant is going to agree with every allegation made by a plaintiff, like here, where Plaintiffs have attempted to stipulate numerous times, but Defendants have refused, denied allegations, and refused to respond to Requests for Production of documents.

---

[1] *See also Hernandez v. Pritchard Indus. (Sw.), LLC*, No. SA-20-CV-00508-XR, 2021 WL 1146005, at *2 (W.D. Tex. Mar. 25, 2021) (J. Rodriguez) (Rejecting Defendant's *Swales* argument against conditional certification, finding that discovery to "review its records" to identify class members does not alter the fact that the class evidence in the motion to conditionally certify were not "similarly situated.").

The *Moore* case is also analogous, and instructive, with respect to the fact that conditional certification and Notice should issue to all Defendants per the evidence provided, reserving any dispute as to joint-liability to the ultimate merit stage of proceedings. *Id.*[2]

### B.    A DISTRICT COURT HAS WIDE DISCRETION TO FACILITATE NOTICE

While it is clear that the Fifth Circuit has diverted from *Lusardi* as the governing standard, it is less clear as to what specific rules or standards a district court is to employ in their discretionary functions to facilitate notice in appropriate cases to potential plaintiffs as a means of implementing the remedies afforded under 29 U.S.C. § 216(b). *Hoffmann–La Roche Inc.*, 493 U.S. at 167.  What is clear; however, is that the Fifth Circuit has given district courts the ability to review each case independent of others and ensure that justice and equity are preserved. The Fifth Circuit in *Swales* states, in pertinent parts:

> Two-stage certification of § 216(b) collective actions may be common practice. But practice is not necessarily precedent. And nothing in the FLSA, nor in Supreme Court precedent interpreting it, requires or recommends (or even authorizes) any "certification" process. The law instead says that the district court's job is ensuring that notice goes out to those who are "similarly situated," in a way that scrupulously avoids endorsing the merits of the case. A district court abuses its discretion, then, when the semantics of "certification" trump the substance of "similarly situated." District courts have impermissibly zeroed in on "certification" standards this way in the past, as explained in our recent decision in *In re JPMorgan Chase & Company.*
> …
> Instead of adherence to *Lusardi*, or any test for "conditional certification," a district court should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of "employees" is "similarly situated." And then it should authorize preliminary discovery accordingly. The amount of discovery necessary to make that determination will vary case by case, but the initial determination must be made, and as early as possible. In other words, the district court, not the standards from *Lusardi*, should dictate the amount of discovery needed to determine if and when to send notice to potential opt-in plaintiffs.
> …
> After considering all available evidence, the district court may conclude that the Plaintiffs and Opt-ins are too diverse a group to be "similarly situated" for purposes of answering whether they are in fact employees, or at least that Plaintiffs have not met their burden of establishing similarity. If that is the case, it may decide the case cannot proceed

---

[2] *See also, Walker v. HongHua Am., LLC*, 870 F. Supp. 2d 462, 465 (S.D. Tex. 2012) (citing *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 926 (D. Ariz. 2010)); *see also Bridges v. Absolute Lawn Care La., LLC*, 2016 U.S. Dist. LEXIS 151078, *32 (E.D. La. Nov. 1, 2016); *Stanfield v. First NLC Fin. Servs., LLC*, 2006 U.S. Dist. LEXIS 98267, *13 (N.D. Cal. Nov. 1, 2006) ("the Court will not evaluate the merits of Plaintiffs' claims under the FLSA at this point in the litigation"); *Barrus v. Dick's Sporting Goods, Inc.*, 465 F. Supp. 2d 224, 230 (W.D.N.Y. 2006)("It is not the Court's role to resolve factual disputes…or…decide substantive issues going to the ultimate merits…at the preliminary certification stage.").

on a collective basis. The district court may instead decide that it needs further discovery to make this determination. Or it may find that only certain subcategories of drivers, depending on their economic dependence on KLLM, should receive notice.

The bottom line is that the district court has broad, litigation-management discretion here. To be sure, that discretion is cabined by the FLSA's "similarly situated" requirement and the Supreme Court's decision in *Hoffman La-Roche*. But it is not captive to *Lusardi* or any "certification" test. It's unnecessary for district courts, owing to inertia (or path-dependence, to continue to invoke and then stretch *Lusardi* beyond recognition (or reason) to fit the case before it. *Swales*, 985 F.3d at 440-443.

### C. EVIDENCE SUPPORTS CONDITIONAL CERTIFICATION

*Swales* directs district courts to identify what facts and legal considerations will be material to determining whether a group of employees is similarly situated. *Id.* Plaintiffs have already done that. A policy of deleting overtime hours is as straightforward a FLSA violation as can be imagined. Two individual D'Argent managers have testified, under oath, that they deleted overtime hours. Ex. A, Ex. E. There is no individualized analysis necessary to figure that out that this is a violation under the FLSA. Nor is there a need for further discovery as Defendants' ex-employees and managers have testified that this was a policy and practice applicable to all of Defendants' employees. *Id.*

This case does not involve the type of fact-intensive inquiry as was at issue in *Swales*, where the proposed collective was a nationwide class with thousands of workers in a range of different locations. Moreover, the Fifth Circuit went out of its way in *Swales* to ensure that district courts use wide discretion in carrying out the ambits and Congressional intent of the FLSA – i.e. worker's rights.

### III. THE DISTRICT COURT ALSO HAS DISCRETION TO EQUITABLY TOLL A COLLECTIVE ACTION TO AVOID PREJUDICE FROM THE UNIQUE PROCEDURAL POSTURE OF COLLECTIVE ACTIONS UNDER § 216(B)

The Fifth Circuit's recent decision in *Swales* did not address the potentially unavoidable and drastically prejudicial impact that procedural requirements for unnecessary discovery and motion practice could have on the rights of putative class members. Discovery disputes, motions, and rulings from the district court on said motions usually takes months to resolve, if not longer. Requiring this kind of procedure in otherwise straightforward collective action cases like this, *before* a district court considers

authorizing notice to an unknowing group of wage victims, is unnecessary and contrary to the legislative intent of the FLSA. In other words, a warped reading of *Swales* could suggest to a defendant that they can use *Swales* as a procedural delay tool to prejudice the rights of unknowing class members. Sure enough, despite all the evidence in this case from ex-manager and employee declarations evidencing a class of similarly situated individuals, Defendants in this case have cited to *Swales* for their refusal to respond to Plaintiffs' Requests for Production and their intent to engage in motion practice. This is not in line with the Fifth Circuit's decision in *Swales*. If it is, then tolling the rights of those individuals, their earned wages, and rights to recover them is absolutely necessary, otherwise the legislative intent of the FLSA is gutted.

The Fifth Circuit, in *Parrish v. Premier Directional Drilling, L.P.*, recently affirmed the intent of the FLSA, stating, "[t]he Supreme Court cautioned litigants over 70 years ago employees are not to be deprived of the benefits of the [FLSA] simply because they are well paid." 917 F.3d 369, 388 (5th Cir. 2019) (citing *Jewell Ridge Coal Corp. v. Local No. 6167, United Mine Workers of Am.*, 325 U.S. 161, 167 (1945)).  Obviously, these protections extend equally, if not more significantly, the low wage workers in this matter.  Moreover, it should also stand to reason, that employees should not be deprived of the benefits of the FLSA simply because of imposed procedural requirements before unknowing putative class members are approved to receive notice of their rights.

Even prior to *Swales*, courts recognized the availability and application of equitable tolling to FLSA plaintiffs where "the only basis for the delay was entirely beyond the control of Plaintiff; to wit, the Court required more information about [defendant] to ensure the propriety of the Court's consideration." *Shidler v. Alarm Sec. Grp., LLC*, 919 F.Supp.2d 827 (S.D. Tex. 2012); *Mejia v. Brothers Petroleum, LLC*,' Civ. A. No. 12-2842, 2014 WL 3853580, at *2 (E.D. La. Aug. 4, 2014) (Tolling considered where "potential opt-in plaintiffs were unaware of their rights, barred from asserting their rights, or have been diligently pursuing their rights but have been prevented from joining the action due to reasons beyond their control….").

The Supreme Court has also outlined some instances where equitable tolling could apply, including inadequate notice of claimants, pending appointment of counsel beyond the plaintiff's control, misleading

14

or incorrect information given by the court, and affirmative misconduct on the part of a defendant. *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984).  Undoubtedly, all of these potential issues, and others, are compounded with the new directives in *Swales* instructing the district court to "identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated,'" to then be followed by preliminary discovery, motions, and rulings.

### A.  EQUITABLE TOLLING AS APPLIED TO THE FLSA

When an employer's violation of the FLSA is willful, the statute of limitations is three years from the accrual of the first violation. *Lima v. Int'l Catastrophe Sols., Inc.,* 493 F.Supp.2d 793, 803 (La. E.D. 2007); 29 U.S.C § 255. The Supreme Court defined violations as "willful" for purposes of the three-year statute of limitations under 29 U.S.C § 255 as "when 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" *Id.* at 802-803 (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).

Alarmingly, under the FLSA, a cause of action begins to accrue "at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed.'" *Id.* at 803 (quoting *Halferty v. Pulse Drug Co., Inc.*, 821 F.2d 261, 2721 (5th Cir. 1987)).  In other words, an employee who has been working at a company for five years, and who has unknowingly been a victim of wage theft (employer having a policy of deleting hours or otherwise) during those five years, has already lost two (possibly three) years of earned wages – and will continue to forever lose earned wages – for each day that passes where the statute of limitations is not suspended.

Conversely, the filing of a class action under Fed. R. Civ. P. 23 immediately tolls limitations for putative class members. *Crown, Cork Seal Co., Inc. v. Parker,* 462 U.S. 345, 345 (1983) (citing *Am. Pipe Construction Co. v. Utah*, 414 U.S. 538 (1974)). Unlike Rule 23 class actions, plaintiffs in an FLSA collective action must "opt in." *See, e.g., LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286 (5th Cir. 1975).

15

The statute of limitations can be deemed suspended in an FLSA action in one of three ways: 1) Filing/Opting-In, 2) Tolling Agreement, and/or 3) a Court's Order.

### A. FILING/OPTING-IN

A litigant's FLSA claims are suspended when the complaint is filed, for individual named party plaintiff(s), or when written [Opt-In] consent is filed in the court where the collective action was commenced, for opt-in plaintiffs. *White v. Integrated Elec. Techs., Inc.*, No. CIV.A. 11-2186, 2015 WL 4254123, at *2 (E.D. La. July 13, 2015); 29 U.S.C. § 256.

### B. TOLLING AGREEMENT BETWEEN PARTIES

Tolling agreements are common devices used by FLSA litigants in order to avoid unnecessary motion practice and provide the parties time to discuss the merits of the claims and defenses. Federal courts uphold these tolling agreements because they are the most efficient way to allow the parties (and the court) to address issues and facilitate orderly notice to putative class members, without significant prejudice to a litigant's rights.

A court in the Eastern District of Louisiana recently discussed the scope of the parties' equitable tolling agreement, in light of defendant's request to delay proceedings, and noted:

> However, until notice is provided to potential class members, the Court cannot be certain that all potential plaintiffs, including those of whom Defendants may be unaware, have been provided adequate opportunity to decide whether litigation is their preferred course of action. Therefore, the prejudice to plaintiff if a stay was granted is significant. *Archon v. Taylor & Tyler Inc.*, CIV. NO. 18-6854 (B)(5) (October 16, 2018 E.D. La.).

Courts in other Circuits agree. "While the [tolling] agreement is not binding on the Court, the Court will toll the three-year statute of limitations....There is a strong public interest in encouraging settlement, and equitable tolling encourages parties to settle out-of-court instead of hastily suing in order to satisfy the statute of limitations." *Davis v. Narron*, No. 5:19-cv-262 (Dec. 15, 2019 E.D.N.C); *Gremillion v. Cox Commc'ns La.,* CIV. NO. 16-9849 (June 22, 2017 E.D. La.) ("Taking into account the parties' 90-day tolling agreement, the Court will use March 24, 2017 as the trigger date for the notice period."); *Carr v. AutoZone, LLC*, CIV. NO. 15-cv-00356 (Nov. 20, 2020 N.D. Ala.) ("In response to Judge Martone's concerns that

potential statute of limitations issues could preclude opt-in plaintiffs from pursuing their claims in subsequent actions, the parties entered a tolling agreement whereby AutoZone agreed that the statute of limitation was tolled for the opt-in plaintiffs' claims during the pendency...."); *Scalia v. Sofia & Gicelle, Inc.*, CIV. NO. 19-0934 (December 30, 2020 D. Md.) ("[T]he parties entered into a tolling agreement, dated October 6, 2017, in which the parties agreed that the statute of limitations would be tolled from that date forward in exchange for DOL not immediately filing a case at that time."); *Torres v. Dino Palmeri Salons, Inc.*, CIV. NO. 19-0934 (December 18, 2019 N.D. Ohio) (Per the tolling agreement, the class was tolled at "three years, four months and nine days from the date of this order...."); *Weisgarber v. N. Am. Dental Grp.*, CIV. NO. 19-0934 (March 20, 2020 N.D. Ohio) (Tolled back "from the filing of the motion for conditional certification."). These are just a few of a very long list of decisions in recent years.

In *Headspeth v. Tpusa, Inc.*, the court conducted a conference in light of plaintiffs' pending Motion for Conditional Certification, and any defenses the defendant wanted to raise in delaying the court's consideration of the conditional certification. CIV. NO. 19-cv-2062 (October 9, 2019 S.D. Ohio).  In *Headspeth*, the court's Order provided:

> Defense counsel requested the opportunity to depose those individuals who have submitted declarations in support of Plaintiffs' Motion for Conditional Certification. The Court denied Defendant's request, explaining that at the conditional certification phase, the court does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility. Defense counsel nevertheless requested the opportunity to file a motion for discovery to brief the issue of whether these depositions should proceed prior to Defendant's deadline for filing an opposition brief.
>
> Plaintiffs' counsel did not object to Defendant's request for an opportunity to brief the issue, **conditional upon Defendant entering into a tolling agreement in view of the fact that the statute of limitations continues to run until written consent i[s] filed with the Court.** Accordingly, if Defendant enters into the agreed-upon tolling agreement, briefing on Plaintiffs' Motion for Conditional Certification is STAYED pending resolution of Defendant's forthcoming motion for discovery, which is due ON OR BEFORE OCTOBER 2, 2019. *Id.* (Emphasis).

The court in *Headspeth* thereafter denied defendant's motion to be allowed discovery at this "fairly lenient" conditional certification stage. *Id.* However, that longstanding "fairly lenient" precedent has recently been

called into question by the Fifth Circuit, making this motion for equitable tolling all the more necessary, as discussed below.

In *In re Sanjel (USA) Inc.*, the bankruptcy court for the Western District of Texas recognized the significant prejudice to the rights of putative FLSA class members and modified a stay order:

> Any tolling of claims against a debtor's officers and directors would come either from a tolling agreement between the parties or at the decision of district court where these claims are being brought. According to Movants, potential class members who have not filed written consents are particularly vulnerable to the FLSA's running statute of limitations. Absent a modification of the stay, Movants are barred from bringing their tolling arguments before the district court until such time as the D&O Stay and CRO Stay expires under the CCAA, which may well be too late in the case that the district court finds that tolling does not apply. CIV. NO. 16-50778 (July 28, 2016 Bankr. W.D. Tex.).

As discussed, D'Argent Defendants have refused to stipulate to any conditional certification class, or to consider any tolling agreement for any putative class members, making this Motion necessary.

## C. TOLLING BY COURT ORDER

Whether to equitably toll a statute of limitations is a decision which rests in the discretion of the district court. *Klick v. Cenikor Found.*, CIV. NO. 19-cv-1583 (December 23, 2020 S.D. Tex.) citing *United States v. Patterson*, 211 F.3d 927, 931 (5th Cir. 2000). "As one district judge has observed: 'Courts routinely grant equitable tolling in the FLSA collective action context to avoid prejudice to actual or potential opt-in plaintiffs that can arise from the unique procedural posture of collective actions under 29 U.S.C. § 216(b).'" *Id.* (citing *Antonio-Morales v. Bimbo's Best Produce, Inc.*, 2009 WL 1591172, at *1 (E.D. La. Apr. 20, 2009) (collecting cases)); *see also Shidler v. Alarm Sec. Grp., LLC*, 919 F. Supp. 2d 827, 829-30 (S.D. Tex. 2012) ("Although the Fifth Circuit has held that the doctrine of equitable tolling should generally be applied sparingly, it has nonetheless consistently allowed the doctrine's application where a plaintiff has acted diligently and the delay concerns extraordinary circumstances.").

Though courts are "cautious not to apply the statute of limitations too harshly," the decision is one that inherently involves weighing the equities at play. *Patterson*, 211 F.3d at 931. The litigant seeking equitable tolling must establish two elements: "(1) that he has been pursuing his rights diligently, and (2)

that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). The plaintiff must show "reasonable diligence, not maximum feasible diligence, and an extraordinary circumstance that derives from some external obstacle to timely filing . . . beyond the plaintiff's control, not from self-inflicted delay." *Sandoz v. Cingular Wireless, L.L.C.*, 700 F. App'x 317, 320 (5th Cir. 2017) (internal quotations and citations omitted).

Courts apply equitable tolling most frequently in cases where "when, 'despite all due diligence, a plaintiff is unable to discover essential information bearing on the existence of his claim,'" and may also grant equitable tolling when "'the plaintiff is actively misled by the defendant about the cause of action.'" *Mejia v. Bros. Petroleum, LLC*, No. 12-2842, 2014, WL 3853580, at *1 (E.D. La. Aug. 4, 2014) (quoting *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir.2002); *Pacheco v. Rice*, 966 F.2d 904, 906-07 (5th Cir. 1992)).

## IV.   EQUITABLE TOLLING IS APPROPRIATE DUE TO DEFENDANTS' ACTIONS

Defendants' actions have also impaired putative class members from being able to know of and/or assert their FLSA rights.

First, two former D'Argent managers swear under oath that they actively deleted the overtime hours of workers from their time-recordkeeping system. Ex. A, Ex. E.

Second, Plaintiffs have made several attempts to discuss stipulations to conditional certification, and tolling agreements, in order to hash out any issue Defendants claim to have with Plaintiffs' proposed Putative Class definitions without prejudice to either side. Defendants have rejected these efforts. Defendants took, however, three months to definitively say they would not agree to tolling. Compare Ex. F (tolling requested on Dec. 9, 2020) with Ex. G (tolling rejected on Feb. 23, 2021).

Finally, Plaintiffs promptly sent discovery requests, and Defendants have refused to answer and produce (and have not produced in their Rule 26 disclosures) discovery on multiple topics and have stated that they will only produce these delinquent responses and documents after motion practice. Ex. H.

These actions have the result of running the clock on the FLSA rights of those individuals who have no knowledge of the violations they are victim of – rights that have been willfully deprived of through company policies and plans deleting evidence of said rights.

As required for equitable tolling, Plaintiffs have taken and attempted every single reasonable and diligent action they can think of to assert and protect the rights of Plaintiffs. Tolling the statute of limitations from the date Defendants' responses to Plaintiffs' discovery was due, March 26, 2021, is only fair for the Putative Class Members.

## V.   CONCLUSION AND RELIEF SOUGHT

Wherefore, Plaintiffs respectfully request that this Court grant the Motion for Conditional Certification for the following:

> All employees who are or were employed by Defendants D'Argent Franchising, LLC, D'Argent Construction, LLC, or D'Argent Companies, LLC at any point from three years prior to the date of filing this Complaint to the present (November 21, 2017 to present), who have worked over 40 hours in at least one workweek from November 21, 2017 to the present, and who were subject to the pay practices of D'Argent Franchising, LLC, D'Argent Construction, LLC, or D'Argent Companies, LLC during that time.

Plaintiffs respectfully request that this Court grant Plaintiffs' Motion for Equitable Tolling for all Putative Class Members to March 26, 2021, the date Defendants' responses to Plaintiffs' Requests for Production was due.

Plaintiffs respectfully request an Order from this Court requiring Defendant to disclose the names, last known home addresses, email addresses (business and home), and home and cellular telephone numbers for the above-defined potential opt-in plaintiffs. Plaintiffs request that this information be provided within ten (10) days from the entry of the Court's Order and in usable electronic form to reduce any delays in sending out the Notices.

Plaintiffs respectfully request an Order directing the parties to meet and confer within ten (10) days from the entry of the Court's Order to confer on a proposed Notice and Consent Form to Putative

Class Members.

Plaintiffs respectfully request that the Court allow the proposed Notice and Consent Forms to be mailed, texted, and emailed to the class members. *Beall v. Tyler Technologies, Inc.*, 2009 WL 3064689, at *1 (E.D. Tex. 2009) (granting class notice via email and later compelling the employer to produce all email addresses, both personal and work); *see also Davis v. Westgate Planet Hollywood Las Vegas, LLC.*, 2009 WL 102735, at * 15 (D. Nev. 2009) (granting class notice via U.S. mail and email).

Finally, Plaintiffs respectfully request that the Court order the posting of the Notice and Consent forms in common areas of Defendants' operational locations for the entire length of the approved opt-in period, for example next to where Defendant currently posts employee schedules and other notices. *See Whitehorn v Wolfgang's Steakhouse, Inc.*, 2011 WL 420528, at *2 (S.D.N.Y. 2011) ("Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail."); *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 678 F. Supp. 2d 89, 96 (E.D.N.Y. 2010) ("[W]hile Defendant object to the posting of the Notice at their business locations--and request an order prohibiting it--such a practice has been routinely approved in other cases.").

<div style="margin-left:40%">

Respectfully Submitted,

/s/Kenneth C. Bordes
Kenneth C. Bordes (Bar #35668)
**KENNETH C. BORDES,
ATTORNEY AT LAW, LLC**
4224 CANAL ST.
NEW ORLEANS, LA 70119
P: 504-588-2700
F: 504-708-1717
E: kcb@kennethbordes.com

William Most (La. Bar No. 36914)
Caroline Gabriel (La. Bar No. 38224)
Most & Associates
201 St. Charles Ave. Suite 114 #101
New Orleans, LA 70170
(504) 509-5023
williammost@gmail.com

</div>

**CERTIFICATE OF SERVICE**

  I hereby certify that the above and foregoing has been electronically filed with the Clerk of Court and served on opposing counsel via the CM/ECF system in accordance with Fed. R. Civ. P. 5(b)(3) on this 7th day of April, 2021.

     /s/ Kenneth C. Bordes
     Kenneth C. Bordes