UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

SAMANTHA WILLIAMS,                          CIVIL ACTION: 20-cv-1501
DAKOTA FISHER, individually
And on behalf of those similarly
Situated, and WES PIGOTT,                   MAG. JOSEPH H.L. PEREZ-MONTES

VERSUS

                                            JURY TRIAL DEMANDED
D'ARGENT FRANCHISING, LLC,
D'ARGENT CONSTRUCTION, LLC,                 Putative Collective Action
THOMAS GIALLONARDO, III,                    Pursuant to 29 U.S.C. § 216(b)
JUSTIN GIALLONARDO, and
XYZ INSURANCE CO.

---

## RENEWED MOTION FOR COLLECTIVE ACTION CERTIFICATION

---

Kenneth C. Bordes (Bar #35668)
KENNETH C. BORDES,
ATTORNEY AT LAW, LLC
4224 CANAL ST.
NEW ORLEANS, LA 70119
P: 504-588-2700
F: 504-708-1717
E: kcb@kennethbordes.com

William Most (La. Bar No. 36914)
Caroline Gabriel (La. Bar No. 38224)
Most & Associates
201 St. Charles Ave. Suite 114 #101
New Orleans, LA 70170
(504) 509-5023
williammost@gmail.com

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

**Summary of the Motion** ........................................................................................ 1

**MEMORANDUM IN SUPPORT OF MOTION FOR COLLECTIVE CERTIFICATION** .... 2

   I.   **Procedural History** ....................................................................................... 2

   II.   **Legal Background** ......................................................................................... 3

      A.   Collective Actions Are Intended to Promote the Efficient Enforcement of FLSA Violations by the Same Employers. ..................................................................... 3

      B.   Swales Re-Urged Courts to Focus on the FLSA's "Similarly Situated" Requirement. ................ 4

   III.   **Discussion** ...................................................................................................... 5

      A.   D'Argent's Common Practice of Not Paying Overtime is Evidenced by Manager's Sworn Statements, D'Argent's Written Policies, Emails, Text Messages, and Payroll Records. .................. 5

      B.   On these Facts, This Court Should Approve Collective Certification and Notice. .................... 12

   IV.   **Conclusion and Relief Sought** ..................................................................... 13

# TABLE OF AUTHORITIES

## Case Law

*Agerbrink v. Model Serv. LLC,* 2016 WL 406385 (S.D.N.Y. Feb. 2, 2016) ……………………………16

*Alba v. Madden Bolt Corp.*, 2002 WL 32639827 (S.D. Tex. June 5, 2002) ……..………………….……14

*Badon v. Berry's Reliable Resource, LLC*, No. Civ. A. 19-cv-12317, 2021 WL 933033 (E.D. La. Mar. 11, 2021) ………………….……………………………………………………...…………..……5

*Beall v. Tyler Techs., Inc.*, No. 2-08-cv-422, 2009 WL 3064689 (E.D. Tex. Sept. 23, 2009) …………..…14

*Brewer v. BP P.L.C.*, 2011 U.S. Dist. LEXIS 151692 (E.D. La. May 11, 2011) ……………………..…15

*Conerly v. Marshall Durbin Co.*, 2007 WL 3326836 (S.D. Miss. 2007) …………………………………12

*Davis v. Westgate Planet Hollywood Las Vegas, LLC*, No. 2:08-cv-00722-RCJ-PAL, 2009 WL 102735 (D. Nev. Jan. 12, 2009) …………………………………….…………………………………..……14

*Dean v. Akal Security, Inc.*, 17-cv-00543-DDD-JPM, ECF No. 116 (W.D. La. Nov. 20, 2017) ……....…12

*DeArmond v. Alliance Energy Servs., LLC*, 2017 WL 3173553 (E.D. La. July 26, 2017) …………………16

*De Leon-Granados v. Eller and Sons Trees, Inc.,* 497 F.3d 1214 (11th Cir. 2007) …………….…………13

*Dickensheets v. Arc Marine, LLC,* 2020 WL 855172 (S.D. Tex. Feb. 19, 2020) …………………………16

*Dyson v. Stuart Petrol. Testers, Inc.*, 308 F.R.D. 510, 517 (W.D. Tex. 2015) …………………..………14-15

*Funez v. E.M.S.P. LLC*, 2016 U.S. Dist. LEXIS 112884 (E.D. La. Aug. 24, 2016) ……………………15

*Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 678 F. Supp. 2d 89 (E.D.N.Y. 2010) …………....………15

*Gee v. Suntrust Mortg., Inc.*, 2011 WL 722111 (N.D. Cal. Feb. 18, 2011) …………………………..……16

*Genesis Healthcare Corp. v. Symczyk,* 133 S.Ct. 1523 (2013)……………………………………..…………3

*Jennings v. Cellco P'ship*, 2012 WL 2568146 (D. Minn. July 2, 2012) …………………………………16

*Jones v. Cretic Energy Servs., LLC,*149 F. Supp. 3d 761 (S.D. Tex. Dec. 9, 2015) …………….…….…14

*Jones v. JGC Dallas LLC*, 2012 WL 6928101 (N.D. Tex. Nov. 29, 2012) ……………………....……15

*Kidwell v. Ruby IV, LLC*, 2019 U.S. Dist. LEXIS 7663 (E.D. La. Jan. 16, 2019) …………………………15

*Hernandez v. Bare Burger Dio Inc.*, 2013 WL 3199292 (S.D.N.Y. June 25, 2013) ……………….....……14

*Hernandez v. Pritchard Indus. (Southwest), LLC*, No. Civ. A. 20-cv-0508, 2021 WL 1146005 (W.D. Tex. Mar. 25, 2021) ……………………………….………………………………...……………5

*Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165 (1989)…………………………….....…………..3-4, 14

*Lima v. Int'l Catastrophe Sols., Inc.*, 493 F. Supp. 2d 793, 797 (E.D. La. 2007) …………….…………12

*Lopez v. WS Energy Servs., LLC*, No. 2:15-cv-135, Doc. 33 (S.D. Tex. Oct. 15, 2015) …………...……15

*Mairena-Rivera v. Langston Construction, LLC*, No. 16-850-JJB-EWD, 2017 WL 2778346 (M.D. La. June 27, 2017) ……………………….. …………………………………………………...……………14

*Morris v. Lettire Const., Corp.*, 896 F. Supp. 2D 265 (S.D.N.Y. 2012) ………………………………….16

*Ndita v. Am. Cargo Assurance, LLC*, 2013 U.S. Dist. LEXIS 63923 (E.D. La. Feb. 25, 2013)…..………14

*Nieddu v. Lifetime Fitness, Inc.*, 977 F. Supp. 2d 686, 690 (S.D. Tex. 2013) ……………..………………12

*Ortiz v. Rain King, Inc.,* No. 4:02-cv-04012, 2003 WL 23741409 (S.D. Tex. Mar. 10, 2003) …………14

*Powell v. One Source EHS, L.L.C.*, No. CV 20-161-SDD-RLB, 2021 WL 4227064 (M.D. La. Sept. 16, 2021)…………………………………………………...……………………………………………5, 12

*Ramirez v. Load Trail, LLC*, 333 F.R.D. 89 (E.D. Tex. 2019) …………………………………………14

*Richard v. Flower Foods, Inc.*, 222 F.Supp.3d 516 (W.D. La. 2016) …………………………...………15

*Rodriguez v. Stage 3 Separation, LLC*, No. 5:14-cv-603-RP, Doc. 57 (W.D. Tex. Mar. 16, 2015) ………..14

*Sandlin v. Grand Isle Shipyard, Inc.*, 2018 WL 2065595 (E.D. La. May 3, 2018) …………………...……16

*Sanchez v. Sephora USA, Inc.*, 2012 WL 2945753 (N.D. Cal. July 18, 2012) ……………………………16

*Segovia v. Fuelco Energy LLC*, 2021 U.S. Dist. LEXIS 101258, at *21-23 (W.D. Tex. May 28, 2021) …..…5

*Swales v. KLLM Transport Services, LLC*, 985 F.3d 430 (5th Cir. 2021). …………………..…iv, 3-5, 12

*Thrower v. Universal Pegasus, Int'l Inc.*, No. 3:19-CV-00068, 2020 WL 5258521 (S.D. Tex. Sept. 3, 2020)..14

*Tolentino v. C & J Spec–Rent Services, Inc.,* 716 F.Supp.2d 642, 651 (S.D.Tex.2010)………………….…..13

*T.S. v. The Burke Foundation*, No Civ. A. 1:19-cv-809, 2021 WL 1807994 (W.D. Tex. Feb. 22, 2021)…....5

*Wade v. Furmanite America, Inc.,* No. 3:17-cv-00169, 2018 WL 2088011 (S.D. Tex. May 4, 2018) ……...14

*Walker v. Honghua America, LLC*, 870 F. Supp. 2d 462, 468 (S.D. Tex. 2012) ………………...………13

*White v. Integrated Elec. Techs., Inc.*, 2013 U.S. Dist. LEXIS 83298 (E.D. La. June 13, 2013) ……...…15-16

*Whitehorn v Wolfgang's Steakhouse, Inc.*, 2011 WL 420528 (S.D.N.Y. 2011) ………………………..……15

*Young v. Energy Drilling Co.*, No. Civ. A. 4:20-cv-1716, 2021 WL 1550343 (S.D. Tex. Apr. 20, 2021) …..5

**Statutory Authority**

29 U.S.C. § 216(b)……………………………………………………………………....2-3

29 U.S.C. § 207(a)(1)………………………………………………………………..…3

**Other Authorities**

*Tip Regulations Under the Fair Labor Standards Act (FLSA)* 85 FR 86756 (Dec. 30, 2020) ………………5

*Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees*, 84 FR 51230 (09/27/2019) ……………………..……………………………………11

## SUMMARY OF THE MOTION

Plaintiffs Samantha Williams and Dakota Fisher (collectively "Plaintiffs"), bring this collective action against Defendants D'Argent Franchising, LLC, D'Argent Construction, LLC, Thomas Giallonardo, III, Justin Giallonardo (collectively, "D'Argent" or "Defendants"), to challenge Defendants' policy and practice of failing to compensate their employees properly for overtime hours worked. Specifically, Defendants employed a company-wide policy of not paying employees for all hours worked in excess of forty in a work week at one and one-half times their regular hourly rate, and manipulation and destruction of records related to hours worked, in violation of the Fair Labor Standards Act.

There is abundant evidence of this scheme, including (1) multiple D'Argent managers who have confessed under oath that they were instructed to – and did – delete workers' overtime hours from the timekeeping system; (2) payroll records showing unpaid/deleted overtime hours; (3) D'Argent's written policy of not paying overtime to salaried workers, regardless of whether they are exempt from overtime under the FLSA; (3) text messages, including from one of D'Argent's owners saying "**We do not pay overtime at Huddle**," (4) admissions during corporate deposition testimony that D'Argent Construction, LLC also did not pay overtime, and so on.

Many FLSA overtime cases involve employers not properly paying time-and-a-half for overtime. But because D'Argent actually had a wide-spread policy of not paying overtime – and deleted hours from the system – workers did not get paid *at all* for some of their owed overtime.

Plaintiffs now move for collective certification for the following class of putative Opt-In Plaintiffs:

> All employees who are or were employed by Defendants D'Argent Franchising, LLC, D'Argent Construction, LLC, or D'Argent Companies, LLC at any point from three years prior to the date of filing this Complaint to the present (November 21, 2017 to present), who have worked over 40 hours in at least one workweek from November 21, 2017 to the present, and who were subject to the pay practices of D'Argent Franchising, LLC, D'Argent Construction, LLC, or D'Argent Companies, LLC during that time.

In support of their Motion, Plaintiffs offer this Court the declarations of two former D'Argent managers who testify to deleting overtime hours, Plaintiffs' declarations, D'Argent's explicit, written policy of not paying overtime to salaried workers, payroll records, text messages, emails, and other documents obtained in discovery. As the evidence and the following analysis demonstrate, Defendants' common pay schemes failed to compensate Plaintiffs and their similarly situated employees for overtime hours at the rates they are entitled by federal law to receive.

For these reasons, Plaintiff asks that this Court grant the motion for collective certification.[1]

**MEMORANDUM IN SUPPORT
OF MOTION FOR COLLECTIVE CERTIFICATION**

### I.      Procedural History

Plaintiffs filed this putative collection action under 29 U.S.C. § 216(b) on behalf of themselves and other similarly situated D'Argent employees ("Putative Class Members") against Defendants for alleged violations of the Fair Labor Standards Act ("FLSA").[2]

On April 7, 2021, Plaintiffs filed a Motion to Certify Collective Action and for Equitable Tolling.[3] On November 2, 2021, this Court denied the motion as premature, explaining that the "Court will entertain later reconsideration following limited prenotice discovery and additional briefing."[4]

On January 12, 2022, this Court entered the Initial Discovery Plan setting forth the schedule and scope of the preliminary discovery to be conducted with respect to collective action certification in this matter.[5]

Despite that discovery plan, Defendants have refused to produce pay records, employment agreements, alleged exemption documentation, and other related documentation for any of the alleged

---

[1] There is a currently pending Motion to Compel (ECF No. 68) which might substantially alter the evidence regarding this Motion. Plaintiffs reserve the right, subject to court approval, to supplement this Motion once the motion to compel is resolved.
[2] ECF No. 1.
[3] ECF No. 27.
[4] ECF No. 50 at 7.
[5] ECF No. 58.

similarly situated putative class members of D'Argent Construction, LLC or D'Argent Companies, LLC, and refuse to provide certain payroll records for D'Argent Franchising, LLC. Accordingly, on April 12, 2022, Plaintiff filed a motion to compel.[6] That motion is currently pending before the Court and set for hearing on May 12, 2022.[7]

On April 22, 2022, this Court granted an extension of the time to file a motion for collective action certification to May 10, 2022.[8]

## II.      Legal Background

### A.   Collective Actions Are Intended to Promote the Efficient Enforcement of FLSA Violations by the Same Employers.

The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract.[9] Section 16(b) of the FLSA, 52 Stat. 1060, as amended, 29 U.S.C. § 216(b), gives employees the right to bring a private cause of action on their own behalf and on behalf of other employees similarly situated for specified violations of the FLSA.[10]

To participate in a collective action, each employee must give her consent in writing by notifying the court of his intent to opt in.[11] A district court has broad discretion in deciding whether to grant or deny certification and broad authority over notice in order to prevent the misuse of such actions.[12] In *Swales,* the Fifth Circuit directed courts to (1) identify, at the outset of litigation, the facts and legal considerations material to a determination of whether workers are similarly situated for purposes of answering merits questions collectively, and (2) determine, based on all available evidence, whether and

---

[6] ECF No. 68.
[7] ECF No. 71.
[8] ECF No. 72.
[9] ECF No. 50, explaining that the FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." See 29 U.S.C. § 207(a)(1).
[10] *See Genesis Healthcare Corp. v. Symczyk*, 133 S.Ct. 1523, 1527 (U.S. 2013) (*citing Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 169–170 (1989)).
[11] *See* 29 U.S.C. § 216(b).5
[12] *Hoffman La Roche, Inc.*, 493 U.S. at 170

to whom the opt-in notice should be distributed.[13]

The FLSA's collective action provision is designed to promote two goals: "(1) enforcement (by preventing violations and letting employees pool resources when seeking relief); and (2) efficiency (by resolving common issues in a single action)."[14] Section 216(b) thus benefits courts and claimants alike: the "judicial system benefits by efficient resolution in one proceeding of common issues of law and fact" caused by the same unlawful employment practices, whereas employees harmed by an employer's unlawful pay practices receive "the advantage of lower individual costs to vindicate rights by the pooling of resources."[15] However, these benefits depend upon the trial court's issuance of "accurate and timely notice concerning the pendency of the collective action, so that [potential plaintiffs] can make informed decisions about whether to participate."[16]

### B. Swales Re-Urged Courts to Focus on the FLSA's "Similarly Situated" Requirement.

In *Swales*, 985 F.3d 430 (5th Cir. 2021), the Fifth Circuit explicitly rejected the "near-universal" *Lusardi* two-stage certification process. In the Fifth Circuit's view, the *Lusardi* framework "distracts district courts from the ultimate issue[] before it" – whether employees who wish to challenge their employer's unlawful wage practices are "similarly situated" for the purposes of Section 216(b).[17] While the Fifth Circuit continued to refrain from formally adopting a legal standard regarding whether employees are "similarly situated," the Fifth Circuit reminded district courts that issuing notice is justified if the "pleadings and only preliminary discovery show sufficient similarity between the plaintiffs' employment situations."[18] In its conclusion, the Fifth Circuit reaffirmed that "the district court has broad, litigation-management discretion" to authorize collective actions under the FLSA. *Id.* at 443.

---

[13] ECF No. 50, *citing Swales*, 985 F.3d 430, 435-441 (5th Cir. 2021).
[14] *Swales v. KLLM Transport Services, LLC*, 985 F.3d 430, 435 (5th Cir. 2021).
[15] *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 170, 110 S.Ct. 482, 486, 107 L.Ed.2d 480, 488 (1989).
[16] *Id.* at 170.
[17] *Id.* at 440.
[18] *Id.* at 441-442.

*Swales* ultimately <u>did not</u> limit the trial court's discretion in determining whether notice is justified, but rather confirmed this Court's wide latitude to make determination on certification. In the post-*Swales* Fifth Circuit, district courts have exercised this broad discretion to certify collective actions.[19] For instance, in *Segovia v. Fuelco Energy LLC*, the Western District of Texas explained that:

> "[S]imilarly situated," as required for pursuit of an FLSA collective action, clearly differs from "identically situated." . . . They may do that by showing "some factual nexus which binds" them and opt-in plaintiffs . . .as alleged victims of a particular policy or practice . . . .

> Even if there are "numerous differences between individual plaintiffs," such differences will not preclude a collective action unless they are material to ultimate issues before the trial court. Undoubtedly, when "one zooms in close enough on anything, differences will abound;" but courts must consider the claims asserted "at a higher level of abstraction."[20]

### III.   Discussion

> #### A. *D'Argent's Common Practice of Not Paying Overtime is Evidenced by Manager's Sworn Statements, D'Argent's Written Policies, Emails, Text Messages, and Payroll Records.*

Defendants are collectively an organization called the D'Argent Companies ("D'Argent"). D'Argent has three wings to its organization – a construction business under the name of D'Argent Construction, LLC, a franchising business under the name of D'Argent Franchising, LLC, and a real estate development business under the name of D'Argent Companies, LLC.

D'Argent owns two quick-service breakfast restaurants – a Huddle House and a CC's Coffee.[21]

---

[19] *See e.g., Powell v. One Source EHS, L.L.C.*, No. CV 20-161-SDD-RLB, 2021 WL 4227064 (M.D. La. Sept. 16, 2021) (certifying the proposed collection action after finding "any factual differences such as 'base' compensation, dates worked, worked performed, and job titles are irrelevant"); *Young v. Energy Drilling Co.*, No. Civ. A. 4:20-cv-1716, 2021 WL 1550343 (S.D. Tex. Apr. 20, 2021) (granting a motion to certify as "whether the employees in the identified positions were subjected to the same pay practice as Young, and therefore are similarly situated, does not depend on the employees' specific job duties or where the employee worked"); *T.S. v. The Burke Foundation*, No Civ. A. 1:19-cv-809, 2021 WL 1807994 (W.D. Tex. Feb. 22, 2021); *Hernandez v. Pritchard Indus. (Southwest), LLC*, No. Civ. A. 20-cv-0508, 2021 WL 1146005 (W.D. Tex. Mar. 25, 2021); *Badon v. Berry's Reliable Resource, LLC*, No. Civ. A. 19-cv-12317, 2021 WL 933033 (E.D. La. Mar. 11, 2021) (affirming certification of a collective action following *Swales*).

[20] *Segovia v. Fuelco Energy LLC*, 2021 U.S. Dist. LEXIS 101258, at *21-23 (W.D. Tex. May 28, 2021) (internal citations omitted).

[21] ECF No. 1, ¶ 14.

All employees working at these restaurants would clock-in and clock-out using last four digits of their social security number in an electronic time management system.[22] Employees working at these franchises would routinely work more than forty hours in a week.[23] But D'Argent has a policy of not paying overtime to all of its workers.[24] Defendants' willful failure to comply with the FLSA is also corroborated by an email in which Justin Giallonardo wrote "[w]e do not pay this shit" about the FLSA's tip make-up provisions.[25]

That policy is not limited to not paying the extra-half-time for overtime hours; it means D'Argent will not pay workers *at all* – even straight-time – for hours worked over 40 in a week.  This is testified to by Wes Pigott and Richard Molina, two former managers of D'Argent's Huddle House and CC's Coffee restaurants. In the sworn affidavit attached as to the Complaint, Mr. Pigott – a former manager – explains the illegal policies and schemes.[26] Manager Pigott was instructed by his supervisor, Justin Giallonardo to "delete any employee hours over forty hours per week."[27]

Per Justin Giallonardo's instructions, every two weeks Mr. Pigott would use Aloha to call up a "payroll report."[28] If any employee had worked more than forty hours per week, he would use the "edit punch" functionality to reduce their hours to forty hours.[29] He would then send the hours from Aloha to the Heartland payroll system to be paid.[30] Mr. Pigott thought this was wrong, and so one month he stopped doing it and, as a result, Justin Giallonardo punished and retaliated against Pigott by deducting approximately $8,000 from his paychecks – which was the amount of the overtime that Pigott did not

---

[22] *Id.* ¶ 15.
[23] *Id.* ¶ 16.
[24] *Id.* ¶ 17.
[25] Ex. A. *Cf. Tip Regulations Under the Fair Labor Standards Act (FLSA)* 85 FR 86756 (Dec. 30, 2020) ("If the employee does not earn sufficient tips to bring his or her hourly earnings to the minimum wage, the employer must pay any additional wages required to make up the difference.")
[26] ECF No. 1-2 at ¶¶ 2-8 (unredacted version at ECF No. 27-E).
[27] *Id.* ¶ 5.
[28] *Id.* ¶ 6.
[29] *Id.*
[30] *Id.*

delete over a period of time.[31]

Pigott estimates that over the course of Plaintiff Williams' work at Huddle House, he deleted in excess of $10,000 of overtime for named Plaintiff Samantha Williams alone.[32]

A text message from Justin Giallonardo to Pigott confirms this, describing an employee who "claims he worked overtime and is not getting paid."[33] Giallonardo was emphatic: "We do not pay overtime at Huddle."[34] Pigott responded: "Taken care of":



Pigott's testimony is corroborated by the statement of another D'Argent manager – not a party to these proceedings – who testifies that "[n]ot only was D'Argent not paying time-and-a-half for overtime hours, it was D'Argent policy not to pay *at all* for overtime hours."[35]  He explains:

> [W]hen I was managing the CC's Coffee House, my subordinates would often work more than 40 hours in a week. To comply with D'Argent's policy of not paying overtime, I would sometimes delete hours in the Brinks Point of Sale system, reducing the hours down to 40. I would then enter 40 hours into the Heartland system, and the employee would be paid for only 40 hours. Other times, if an employee hit 40 hours, I would just tell them not to clock-in for the rest of their hours that week – but they still had to keep working.[36]

D'Argent's own payroll records from "D'Argent Franchising, LLC" also corroborate this, reflecting the deleted hours as "edit punches." Records provided from the CC's restaurant prove the

---

[31] *Id.* ¶ 7.
[32] *Id.* ¶ 8.
[33] Ex. B (Text Messages Between Giallonardo and Pigott).
[34] *Id.* At deposition, Mr. Giallonardo admitted he sent this text message, but said it was "a joke." He did not explain what the joke was.
[35] ECF No. 27-2 (Molina Dec.) at ¶ 7 (emphasis in original).
[36] *Id.* at ¶¶ 8-10.

managers' declarations, that they were instructed to delete hours, but also prove that most deletions and edits to the hours were made by a "D'Argent Franchising" user.[37] The records provided from June 8, 2019 to September 8, 2020 – only a span of 15 months – shows over **1,325** edits to employee hours, alleging the 1,325 edits edit was necessary because the employee took a break or forgot to clock out.[38] Similarly, records provided from Defendants' Huddle House restaurant also prove the managers' declarations.[39] The records provided from Nov. 13, 2018 to Nov. 13, 2020 show thousands of lines of edits – an excel exhibit of 27,242 lines to be exact – that is too large to attach, and the exhibit provided here represents only the first 3,000 lines from that excel sheet.[40]  Complete records for the entire statutory period would undoubtedly reveal similar deleted work hours for employees, proving the declarations and collective action allegations provided by Plaintiffs.

Likewise, named Plaintiff Dakota Fisher's "D'Argent Construction, LLC" payroll records confirm his allegations that D'Argent also refused to pay any overtime to D'Argent's manual laborers under that wing of the enterprise as well. Attached as "Exhibit E" is a payroll record from D'Argent showing that Plaintiff's straight-time was supposed to be $16.00 per hour (Rate1"), and $24.00 per hour for overtime ("Rate2"). However, despite the stub clearly reflecting 52 hours one week (12 overtime hours owed), and 56.5 hours the next week (16.5 overtime hours owed), no overtime was ever paid, supporting Plaintiffs" allegations.[41]

Curiously, D'Argent still refuses to turn over pay records and/or employments agreements for those construction workers alleged to be similarly situated to Plaintiff Fisher. When D'Argent was confronted with the wage records confirming the evidence of overtime violations, D'Argent attempted to excuse not paying overtime *during* employment with the allegations that Plaintiff Fisher because he

---

[37] Ex. C, Edited Hours, D'Argent Franchising, LLC - CC's from June 8, 2019 to September 8, 2020.
[38] *Id*.
[39] Ex. D, Edited Hours, D'Argent Franchising, LLC – Huddle House from Nov. 13, 2018 to Nov. 13, 2020.
[40] *Id*..
[41] Ex. E, Sample payroll record from D'Argent Construction for Dakota Fisher.

"stole tires and a cell phone from us."[42] However, even if this were true – and it is not – that does not explain why D'Argent *never* paid overtime in any of the prior weeks worked, and when pressed on that issue, D'Argent's counsel attempted to object and the deponent asked for a break.[43]

Similarly, when questioned about the similarities of Plaintiff Fisher's wage violations with that of the other D'Argent construction workers, all D'Argent could do was attack Plaintiff Fisher personally, confirming that he was similarly situated to all other D'Argent construction workers:

> Q. I understand everything you're saying about him as an individual and -- and things that you felt and how -- whatever about Mr. Fisher personally. But my question is more specific to the paperwork and how his pay was documented, hours kept, and pay recorded. Was this the same as D'Argent Construction treated its other employees with regard to how its hours were kept and how its pay was administered to its pay -- to these people?

**A. For hourly employees, correct.[44]**

After this response, undersigned began to probe as to why D'Argent refused to provide responsive records related to the similarly situated D'Argent construction putative class members, and those questions were again met with vociferous objections from defense counsel, and the related documents have not been provided to date, with a motion to compel (ECF No. 68) pending:

> Q. So how am I -- how am I going to determine if he's similarly situated or not if I don't see the other ones?
>
> [multiple objections and discussion amongst counsel]

**THE WITNESS: I don't know.[45]**

Undersigned then showed a copy of this Court's preliminary discovery order, ECF No. 58, to D'Argent's corporate deponent, identifying the topic "pay and payroll structure," to which the deponent testified that he did not recall seeing that document prior to that point.[46]

Plaintiff Fisher and his co-workers, who performed manual labor construction work, would work

---

[42] Ex. F, J. Giallonardo Corporate Depo.at 82.
[43] *Id.* at 82-95.
[44] *Id.* at 87-88.
[45] *Id.* at 91-93.
[46] *Id.* at 89-90.

as much as 70 hours in a week, but not be paid for the hours over 40.[47] He testifies that he was not alone; his co-workers were also denied any overtime pay.[48] Plaintiff Fisher also alleges he was misclassified as an independent contractor for the first several weeks of his employment, like many others, and was later classified as an employee for several weeks.[49] D'Argent does not deny this, acknowledging that the only difference they claim in his employment duties was that they had him sign an independent contractor agreement when he began, but he performed the same duties at all times.

> Q. Okay. It says Dakota worked January 8, 2020 to February 12th of 2020 as an independent contractor. Do you see that?
> **A. Yes.**
> Q. Okay. What were -- were his duties the same or different from January 8th to February 12th as when he was an employee, or were they different?
> **A. I would say so for sure.**
> Q. Okay. How were they different?
> **A. Based off independent contractor agreement compared to employee agreement, but I'm not sure exactly what duties were different. But two different scenarios.**
> Q. All right. So the agreement itself was different, but the actual -- actual performance that he did, you're not sure what he did that was different in performance?
> **A. Correct.**
> Q. Okay. That's correct?
> **A. Yes.** [50]

Likewise, D'Argent's salaried main office workers, who worked on behalf of all Defendant LLCs, were similarly denied overtime pay; indeed, the refusal to pay overtime is D'Argent's <u>explicit, written policy</u>.  D'Argent's manual says the following:

Salaried -- A full-time employee is one who works a minimum of 40 hours in a pay period. A salaried employee may be hired or promoted to such status. This excludes employees who have been hired as a temporary employee. **Salaried employees are not allowed overtime compensation**

[51]

Another version of the D'Argent manual – which applied to the "D'Argent Companies" generally – repeated this directive, stating that "Salaried employees will not be paid on an overtime basis and may

---

[47] Ex. G, May 10, 2022 Decl. of Dakota Fisher; ECF No. 27-4 at ¶¶ 5-6.
[48] Id. at ¶ 7.
[49] Ex. G, May 10, 2022 Decl. of Dakota Fisher at ¶¶ 3-6.
[50] Ex. F, J. Giallonardo Corporate Depo.at 137-138.
[51] ECF No. 27-5 at pg. 12.

be asked to work extra hours as business demands."[52]

But as Defendants are well aware, being paid on a salary basis does not in and of itself exempt a worker from overtime requirements.[53] Indeed, in 2018 they were explicitly advised of this. That year, on August 27, 2018 a consultant wrote them an email explaining that:

> Exemption from overtime is much more complex than a payment arrangement such as salary pay. . . . You may still pay an employee a salary, but you should watch the hours worked to ensure that employee is compensated for overtime if it is worked.[54]

Amazingly, the version of the the manual that says "Salaried employees will not be paid on an overtime basis" is entitled "JG HR Manual Final 12-10-18." That suggests that D'Argent retained the no-overtime-for-salaried-employees rule even <u>after</u> they had been specifically advised it was illegal. At some point later they changed the text of the manual to say that "*Exempt* salaried employees will not be paid on an overtime basis," but in practice continued to not pay salaried workers any overtime.

The documentary and testimonial evidence is extremely substantial – and far more substantial than is needed at the collective certification stage. Plaintiffs Samantha Williams and Dakota Fisher were two of the workers denied overtime under these D'Argent policies.[55]  Ms. Williams, in her role as a management trainee, also saw D'Argent's payroll records and observed that workers were not getting paid for hours they worked over forty in a week.[56] She also overheard Justin Giallonardo direct the franchise managers to not pay overtime.[57] Plaintiff Fisher confirmed the same related to himself and his co-workers doing construction work.

---

[52] Ex. H at 19.

[53] *See, e.g., Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees*, 84 FR 51230 (09/27/2019) .

[54] Ex. I, August 27, 2018 email warning about overtime.

[55] *See* ECF No. 27-3 (Dec. of Williams); Ex. G, May 10, 2022 Decl. of Dakota Fisher; and 27-4 (Dec. of Fisher).

[56] ECF No. 27-3 at ¶ 7.

[57] *Id.* at ¶ 8.

### B. On these Facts, This Court Should Approve Collective Certification and Notice.

In *Swales,* the Fifth Circuit directed trial courts presiding over FLSA collective actions to order preliminary discovery in order to determine "whether merits questions can be answered collectively."[58] This echoed prior decisions in which "courts require only a minimal showing that (1) there is a reasonable basis for the plaintiff's allegations, (2) that the aggrieved putative class members are similarly situated with regard to the claims and defenses asserted, and (3) that these individuals desire to opt in to the suit."[59] By contrast, courts "deny collective action treatment and decline to authorize class notice where no common employer policy or practice exists and the resolution of claims requires individual factual determinations and defenses."[60]

A plaintiff bears the bears the burden of making a preliminary factual showing that similarly situated individuals exist, but "need only demonstrate a reasonable basis for the allegation that a class of similarly situated persons may exist."[61] Even post-Swales, courts have been reluctant to fully address merit issues or affirmative defenses; keeping the focus on whether there are plausibly similarly situated individuals, and whether those individuals have merit questions that can be resolved collectively.

The Middle District of Louisiana recently addressed, and rejected, a defendant's attempts to prematurely address affirmative defense merit issues beyond collective action certification and notice:

> Defendant's argument is essentially that Powell must proffer evidence that he, and the members of the proposed collective, will be able overcome Defendant's affirmative defenses before the Court can authorize notice. That cannot be the case. At this stage, the focus is on whether the merits of the proposed collective's case can be decided collectively.[62]

But for now, at this stage, Plaintiffs present overwhelming evidence in support of widely-applied pay policies and practices in violation of the FLSA, inclusive of sworn statements by two D'Argent

---

[58] *Swales*, 985 F.3d at 441.
[59] *Dean v. Akal Security, Inc.*, 17-cv-00543-DDD-JPM, ECF No. 116 at *5 (W.D. La. Nov. 20, 2017), *citing Nieddu v. Lifetime Fitness, Inc.*, 977 F. Supp. 2d 686, 690 (S.D. Tex. 2013).
[60] *Dean, supra, citing Conerly v. Marshall Durbin Co.*, 2007 WL 3326836, at *11 (S.D. Miss. 2007)
[61] *Dean, supra, citing Lima v. Int'l Catastrophe Sols., Inc.*, 493 F. Supp. 2d 793, 797 (E.D. La. 2007)
[62] *Powell v. One Source EHS, L.L.C.*, No. CV 20-161-SDD-RLB, 2021 WL 4227064, at *4 (M.D. La. Sept. 16, 2021).

managers confessing to the deleting of overtime hours, payroll records showing deleted hours, construction payroll records showing no overtime pay, written correspondence from owners saying "we do not pay overtime" and instructing overtime be deleted, handbook evidence establishing a "no overtime" policy, etc.

And because the evidence shows that the aggrieved putative class members are similarly situated with regard to the claims and defenses asserted, collective treatment is properly administered with this Court's discretion. Each of the putative class members worked for one or the three wings of the D'Argent Companies, and jointly for Defendants' collective benefit. Each of them was subject to the direct oversight of the Giallonardo family through the D'Argent Companies headquarters. And each of them was subject to theft of their earned overtime, through one of a small number of mechanisms (deletion of hours, categorical exclusion of salaried workers, *etc.*). As a result, they meet the FLSA's requirements for being similarly situated – especially considering that the FLSA only requires that putative class members' positions are "similar, not identical, to putative plaintiffs."[63] As a result, "[s]light differences in job duties or functions do not run afoul of the similarly situated requirement."[64] If this Court should find, however, that there are significant differences between class members, the problem can be solved by identifying three sub-classes for (1) D'Argent restaurant workers; (2) D'Argent office workers; and (3) D'Argent construction workers.[65] Accordingly, collective certification should be granted.

## IV.    CONCLUSION AND RELIEF SOUGHT

Wherefore, Plaintiffs respectfully request that this Court grant the Motion for Certification for the following:

> All employees who are or were employed by Defendants D'Argent Franchising, LLC, D'Argent Construction, LLC, or D'Argent Companies, LLC at any point from three years prior to the date of filing this Complaint to the present (November 21, 2017 to present), who have worked over 40 hours in at least one workweek from November

---

[63] *Walker v. Honghua America, LLC*, 870 F. Supp. 2d 462, 468 (S.D. Tex. 2012).
[64] *Id., quoting Tolentino v. C & J Spec–Rent Services, Inc.,* 716 F.Supp.2d 642, 651 (S.D.Tex.2010).
[65] *See, e.g., De Leon-Granados v. Eller and Sons Trees, Inc.,* 497 F.3d 1214 (11th Cir. 2007) (upholding use of subclass in FLSA case).

21, 2017 to the present, and who were subject to the pay practices of D'Argent Franchising, LLC, D'Argent Construction, LLC, or D'Argent Companies, LLC during that time.

Plaintiffs respectfully request an Order from this Court requiring Defendant to disclose the names, last known home addresses, email addresses (business and home), and home and cellular telephone numbers for the above-defined potential opt-in plaintiffs.[66] Plaintiffs request that this information be provided within ten (10) days from the entry of the Court's Order and in usable electronic form to reduce any delays in sending out the Notices.

Plaintiffs respectfully request an Order directing the parties to meet and confer within ten (10) days from the entry of the Court's Order to confer on a proposed Notice and Consent Form to Putative Class Members.

Plaintiffs respectfully request that the Court allow the proposed Notice and Consent Forms to be mailed, texted, and emailed to the class members.[67]

---

[66] In the Fifth Circuit, and others, "courts often grant this kind of request in connection with a conditional certification of an FLSA collective action." *Hernandez v. Bare Burger Dio Inc.*, 2013 WL 3199292, at *5 (S.D.N.Y. June 25, 2013) (collecting cases); s*ee, e.g., Mairena-Rivera v. Langston Construction, LLC*, No. 16-850-JJB-EWD, 2017 WL 2778346, at *6 (M.D. La. June 27, 2017) (ordering the production of names, last-known addresses, and e-mail addresses of potential claimants in order granting conditional certification); *Jones v. Cretic Energy Servs., LLC*,149 F. Supp. 3d 761 (S.D. Tex. Dec. 9, 2015); *Ramirez v. Load Trail, LLC*, 333 F.R.D. 89, 96 (E.D. Tex. 2019) (ordering production of names, job titles, addresses, telephone numbers, social security numbers, and e-mail addresses of putative class members, and permitting e-mail notice and a 30-day reminder notice); *Dyson v. Stuart Petrol. Testers, Inc.*, 308 F.R.D. 510, 517 (W.D. Tex. 2015) (ordering production of names, addresses, email addresses, and phone numbers); *Beall v. Tyler Techs., Inc.*, No. 2-08-cv-422, 2009 WL 3064689, at *1 (E.D. Tex. Sept. 23, 2009) (granting class notice via email and compelling the employer to produce all email addresses, both personal and work); *Davis v. Westgate Planet Hollywood Las Vegas, LLC*, No. 2:08-cv-00722-RCJ-PAL, 2009 WL 102735, at * 15 (D. Nev. Jan. 12, 2009) (granting circulation of notice via U.S. mail and email); *Ortiz v. Rain King, Inc.*, No. 4:02-cv-04012, 2003 WL 23741409, at *1 (S.D. Tex. Mar. 10, 2003) (ordering the defendant to produce the names, addresses, and phone numbers of class in a readable computer format)*; Alba v. Madden Bolt Corp.*, 2002 WL 32639827, at *1 (S.D. Tex. June 5, 2002) (ordering the defendant to produce the full name, last known address, telephone numbers, dates and location of employment for prior three years); *see also Hoffmann-LaRoche*, 493 U.S. 165, 170 ("The District Court was correct to permit discovery of the names and addresses …."); *Ndita v. Am. Cargo Assurance, LLC*, 2013 U.S. Dist. LEXIS 63923, at *3 (E.D. La. Feb. 25, 2013) (ordering Defendant to provide Plaintiff with the last known addresses, e-mail addresses, and telephone numbers of members of the collective).

[67] Email notice has become an accepted—and even a preferred—form of notice in FLSA collective actions. *See Thrower v. Universal Pegasus, Int'l Inc.*, No. 3:19-CV-00068, 2020 WL 5258521, at *9 (S.D. Tex. Sept. 3, 2020) (approving mail, e-mail, and text message notice in an FLSA collective action); *Mairena-Rivera*, 2017 WL 2778346, at *6 (M.D. La. June 27, 2017) (approving e-mail notice);*Ramirez*, 333 F.R.D. at 96;*Wade v. Furmanite America, Inc.*, No. 3:17-cv-00169, 2018 WL 2088011, at *7-8 (S.D. Tex. May 4, 2018); *Rodriguez v. Stage 3 Separation, LLC*, No.

Plaintiffs also respectfully request that the Court order the posting of the Notice and Consent forms in common areas of Defendants' operational locations for the entire length of the approved opt-in period, for example next to where Defendant currently posts employee schedules and other notices.[68]

Plaintiffs request that the court set an opt-in deadline 90 days after the date in which notice is sent to members of the collective, and that any opt-ins who seek to join the action after that deadline must establish good cause for their delay. This 90-day deadline is necessary for reasons related to pandemic and hurricane complications in the southeastern United States, in case any notices are returned as undeliverable, so that Plaintiffs may take additional steps to contact these individuals. A 60-day opt-in period is standard in Louisiana,[69] and a 90-day opt-in period is not unusual in the right circumstances such as this.[70]

Finally, Plaintiffs request authorization to for a reminder notice by telephone, 21 days prior to the close of the opt-in period, to any putative class members who have not yet opted in. Employees who have left the employment of a company frequently do not provide their former employer with up-to-date contact information.[71] As courts have noted, "telephone numbers … provide a more stable means of contacting a person who has moved than a mailing address."[72] For this reason, follow-up telephone calls

---

5:14-cv-603-RP, Doc. 57, at *2 (W.D. Tex. Mar. 16, 2015)(*citing Jones v. JGC Dallas LLC*, 2012 WL 6928101, at *5 n.9 (N.D. Tex. Nov. 29, 2012)); *Hester*, 4:18-cv-1078, Doc. 69, at *10-12 (describing email as a "common, and often primary, means of communication for many workers" and allowing notice to be sent via email). The production of email addresses and allowing notice by way of email and text message is particularly important due to recent complications arising from the Covid-19 pandemic, Hurricane Ida damage and relocations in Louisiana and elsewhere.

[68] *See Whitehorn v Wolfgang's Steakhouse, Inc.*, 2011 WL 420528, at *2 (S.D.N.Y. 2011) ("Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail."); *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 678 F. Supp. 2d 89, 96 (E.D.N.Y. 2010) ("[W]hile Defendant object to the posting of the Notice at their business locations--and request an order prohibiting it--such a practice has been routinely approved in other cases.").

[69] *See White v. Integrated Elec. Techs., Inc.*, 2013 U.S. Dist. LEXIS 83298, at *41 (E.D. La. June 13, 2013) (approving 60 day opt-in period); *Brewer v. BP P.L.C.*, 2011 U.S. Dist. LEXIS 151692, at *1 (E.D. La. May 11, 2011) (same).

[70] *Kidwell v. Ruby IV, LLC*, 2019 U.S. Dist. LEXIS 7663, *23 (E.D. La. Jan. 16, 2019); *Funez v. E.M.S.P. LLC*, 2016 U.S. Dist. LEXIS 112884 (E.D. La. Aug. 24, 2016).

[71] *See Lopez v. WS Energy Servs., LLC*, No. 2:15-cv-135, Doc. 33, at *3 (S.D. Tex. Oct. 15, 2015); *see also Richard v. Flower Foods, Inc.*, 222 F.Supp.3d 516, 528 (W.D. La. 2016) (ordering the production of last known telephone numbers of putative class members).

[72] *Jaso*, No. 2:15-cv-269, Doc. 17, at *6 (*citing Dyson*, 308 F.R.D. at 516-17); *see also, Jones*, 149 F. Supp. 3d at 776.

15

by Class Counsel to those certain Putative Class Members who have not responded, or whose contact information during the course of the notice period is shown to be incorrect or no longer valid, is appropriate to ensure notice.  Many courts have authorized this practice because "notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in."[73]  Indeed, courts within this district approve such reminder notices.[74] The cost and administrative expense of this notice will be borne entirely by Plaintiffs' counsel and, given the difficulty of reaching many of the workers at issue in this case, a second reminder notice is appropriate to help ensure that all potential class members are given fair notice of their rights.

Respectfully Submitted,

/s/ Kenneth C. Bordes
Kenneth C. Bordes (Bar #35668)
KENNETH C. BORDES,
ATTORNEY AT LAW, LLC
4224 CANAL ST.
NEW ORLEANS, LA 70119
P: 504-588-2700
F: 504-708-1717
E: kcb@kennethbordes.com

William Most (La. Bar No. 36914)
Caroline Gabriel (La. Bar No. 38224)
Most & Associates
201 St. Charles Ave. Suite 114 #101
New Orleans, LA 70170
(504) 509-5023
williammost@gmail.com

I certify that the foregoing was served via the Court's ECF system on this 10th day of May, 2022.

/s/ Kenneth C. Bordes

---

[73]*Morris v. Lettire Const., Corp.*, 896 F. Supp. 2D 265, 274-275 (S.D.N.Y. 2012); *see also Dickensheets v. Arc Marine, LLC,* 2020 WL 855172, at *2 (S.D. Tex. Feb. 19, 2020) (same)*; Agerbrink v. Model Serv. LLC,* 2016 WL 406385, at *8 (S.D.N.Y. Feb. 2, 2016) (same)*; Sanchez v. Sephora USA, Inc.*, 2012 WL 2945753, at *6 (N.D. Cal. July 18, 2012) (approving distribution of reminder notice); *Jennings v. Cellco P'ship*, 2012 WL 2568146, at *6 (D. Minn. July 2, 2012) (same); *Gee v. Suntrust Mortg., Inc.*, 2011 WL 722111, at *4 (N.D. Cal. Feb. 18, 2011)(same);

[74]*Sandlin v. Grand Isle Shipyard, Inc.*, 2018 WL 2065595 (E.D. La. May 3, 2018) ("Thirty (30) days after the first mailing, Sandlin's counsel shall send a reminder notice consisting of the notice of rights and consent form…"); *DeArmond v. Alliance Energy Servs., LLC*, 2017 WL 3173553 (E.D. La. July 26, 2017) (same); *White v. Integrated Elec. Techs., Inc.*, 2013 WL 2903070 (E.D. La. June 13, 2013) (same).